RECORD NO. 15-1673

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

MARIO PETRUZZO; JEFFREY BUSH;
KIMBERLY BUSH,

*Plaintiffs-Appellants,*

v.

HEALTHEXTRAS INCORPORATED; CATAMARAN HEALTH SOLUTIONS,
LLC, f/k/a Catalyst Health Solutions, Incorporated; ALLIANT INSURANCE
SERVICES, INCORPORATED; ALLIANT SERVICES HOUSTON,
INCORPORATED; NATIONAL UNION FIRE INSURANCE COMPANY, d/b/a
National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a member
of American International Group, Inc. (AIG); VIRGINIA SURETY COMPANY,
Incorporated, HEALTHEXTRAS, LLC,

*Defendants-Appellees,*

and

HEALTHEXTRAS BENEFITS ADMINISTRATORS, INCORPORATED;
HEALTHEXTRAS INSURANCE AGENCY, INCORPORATED; ALLIANT
INSURANCE SERVICES HOUSTON, INCORPORATED, f/k/a Capital Risk, LLC,
f/k/a Jardine Lloyd Thompson, LLC; GROUP INSURANCE TRUST, d/b/a
AIG Group, for the Account of HealthExtras; HEALTHEXTRAS, LLC,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

### RESPONSE BRIEF OF APPELLEES

Phoebe N. Coddington
Stacie C. Knight
WINSTON & STRAWN LLP
100 North Tryon Street
29th Floor
Charlotte, NC 28202-1078
(704) 350-7700

*Counsel for Appellee
Virginia Surety Company,
Inc.*

Harvey Kurzweil
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-4620

*Counsel for Appellee
Virginia Surety Company,
Inc.*

Neal R. Marder
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700
*ECF Registration Pending*

*Counsel for Appellee
Virginia Surety Company,
Inc.*

**ADDITIONAL COUNSEL LISTED ON BACK OF COVER**

# NO. 15-1673
## ADDITIONAL APPELLEE COUNSEL

Patrick J. Murphy
QUARLES & BRADY
411 East Wisconsin Avenue
Suite 2350
Milwaukee, WI 53202
(414) 277-5459

*Counsel for Appellee*
*Catamaran Health Solutions, LLC*

Paul L. Langer
QUARLES & BRADY LLP
300 North LaSalle Street
Suite 4000
Chicago, IL 60654
(312) 715-5000

*Counsel for Appellee*
*Catamaran Health Solutions, LLC*

Sean A. Commons
Mark E. Haddad
SIDLEY AUSTIN LLP
555 West Fifth Street
Suite 4000
Los Angeles, CA 90013
(213) 896-6000

*Counsel for Appellee*
*National Union Fire Insurance Company*

Theodore R. Scarborough
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Counsel for Appellee*
*National Union Fire Insurance Company*

Melanie B. Dubis
Charles E. Raynal, IV
Matthew H. Mall
PARKER, POE, ADAMS & BERNSTEIN, LLP
301 Fayetteville Street
Suite 1400
Raleigh, NC 27602-0389
(919) 835-4626

*Counsel for Appellees*
*Alliant Insurance Services, Incorporated*
*and Alliant Services Houston, Incorporated*

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following listed entities meet the requirements of Local Rule 26.1(a):

**Defendants-Appellees Catamaran Health Solutions, LLC; Catalyst Health Solutions, Inc.; and HealthExtras, Inc.:**

Defendant-Appellee Catamaran Health Solutions, LLC is a wholly-owned subsidiary of Catamaran LLC. Catamaran LLC is a wholly-owned subsidiary of Catamaran Holdings I, LLC. Catamaran Holdings I, LLC is a wholly-owned subsidiary of 1031387 B.C. Unlimited Liability Company. 1031387 B.C. Unlimited Liability Company is a wholly-owned subsidiary of Optum, Inc. Optum, Inc. is a wholly-owned subsidiary of United HealthCare Services, Inc. United HealthCare Services, Inc. is a wholly-owned subsidiary of UnitedHealth Group Incorporated. UnitedHealth Group Incorporated is a publicly-traded corporation.

UnitedHealth Group Incorporated indirectly owns 10% or more of Catamaran Health Solutions, LLC.

Defendant-Appellee Catalyst Health Solutions, Inc. was succeeded by merger to Catamaran Health Solutions, LLC in 2012, with Catamaran Health Solutions, LLC being the surviving entity post-merger.

Defendant-Appellee HealthExtras, Inc. changed its name to Catalyst Health Solutions, Inc. in 2008 and was subsequently succeeded by merger to Catamaran Health Solutions, LLC in the 2012 transaction referenced in the preceding paragraph.

**Defendant-Appellee Alliant Insurance Services, Inc.**:

Alliant Insurance Services, Inc.'s parent company is Alliant Holdings I, LLC (a Delaware LLC). Alliant Holdings, I, LLC's parent company is Alliant Holdings I, LP.

No publicly-held corporation owns 10% of more of Alliant Insurance Services, Inc.'s stock.

**Defendant-Appellee Alliant Services Houston, Inc.**:

Alliant Services Houston, Inc.'s parent company is Alliant Insurance Services, Inc. Alliant Holdings I, LLC (a Delaware LLC) is the parent corporation of Alliant Insurance Services, Inc. and Alliant Holdings I, LP is the corporate parent of Alliant Holdings I, LLC.

No publicly-held corporation owns 10% or more of Alliant Services Houston, Inc.'s stock.

**Defendant-Appellee Virginia Surety Company, Inc.**:

Virginia Surety Company, Inc. is a wholly owned subsidiary of TWG Holdings, Inc., a Delaware corporation whose ultimate parent is TWG Holdings Limited. TWG Holdings Limited is a Bermuda corporation.

No publicly-held corporation owns 10% or more of Virginia Surety Company, Inc.'s stock.

**Defendant-Appellee National Union Fire Insurance Company of Pittsburgh, Pa.**:

National Union Fire Insurance Co. of Pittsburgh, Pa. is a wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of AIUH LLC, which is a wholly-owned (100%) subsidiary of AIG International Group, Inc., which is a publicly-held corporation.

AIG International Group, Inc. owns 10% or more of National Union Fire Insurance Co. of Pittsburgh, Pa.'s stock.

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...........................................................................vi

JURISDICTIONAL STATEMENT .....................................................................1

COUNTER-STATEMENT OF THE ISSUES ........................................................2

STATEMENT OF THE CASE.............................................................................3

    I.  Background. .........................................................................................3

    II.  Facts Alleged In The First Amended Complaint ....................................4

    III.  Virginia Surety's Motion to Dismiss ....................................................7

    IV.  The District Court's May 22, 2015 Order ..............................................8

SUMMARY OF ARGUMENT ............................................................................9

ARGUMENT ..................................................................................................12

    I.  Standard of Review .............................................................................12

    II.  The District Court Properly Dismissed The First Amended
        Complaint Because Plaintiffs Lack Article III Standing
        To Bring This Action..........................................................................13

        A.    Plaintiffs Must Allege A "Concrete And Particularized"
              Injury To Satisfy their Burden Of Pleading Standing...................13

        B.    The Policies Are Valid And Enforceable Under North
              Carolina Law ...........................................................................16

        C.    Federal Courts Have Dismissed Identical Lawsuits
              Related To The Same Program Because The Policies Are
               Valid And Enforceable As A Matter Of Law ...............................20

D. Plaintiffs' Allegations That Defendants Violated Their Alleged Statutory Rights Are Insufficient To Confer Standing....................................................................23

E. Pleading A Theory That Is Foreclosed By Statute Is Insufficient To Confer Standing ...................................26

F. The Court Should Reject Plaintiffs' Invitation To Disregard The Plain Language Of N.C. Gen. Stat. § 58-50-15(b)...................................................................27

G. The Out-Of-State Decisions Cited By Plaintiffs Do Not Support Their Arguments...............................................31

H. Plaintiffs' "New" Injuries Do Not Establish Standing .................36

III. Plaintiffs' "Unauthorized Premium Increase" Theory Fails As A Matter of Law ...........................................................44

IV. Because Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted, Dismissal Also Was Proper Under Rule 12(b)(6)............................................................................46

V. Plaintiffs' Claims Are Time-Barred.......................................49

CONCLUSION....................................................................................53

STATEMENT REGARDING ORAL ARGUMENT ...........................................55

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD COUNT LIMITATIONS ...................................................................56

v

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alston v. Countrywide Fin. Corp.,
   585 F.3d 753 (3rd Cir. 2009) ...............................................................25

Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,
   367 F.3d 212 (4th Cir. 2004) .................................................................6

Am. Equitable Assurance Co. v. Gold,
   106 S.E.2d 875 (N.C. 1959) ................................................................45

Ashley v. U.S. Dep't of Interior,
   408 F.3d 997 (8th Cir. 2005) ...............................................................26

Bank of Am. v. Martin,
   No. 1:12-cv-544, 2013 WL 5128840......................................................40

Brooks v. City of Winston-Salem, N.C.,
   85 F.3d 178 (4th Cir. 1996) .................................................................52

Broughman v. Carver,
   624 F.3d 670 (4th Cir. 2010) ...............................................................14

Brown v. Nucor Corp.,
   785 F.3d 895 (4th Cir. 2015) ...............................................5, 16, 46

Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co.,
   62 Cal. App. 4th 1166 (1998) ..............................................................43

Campbell v. National Union Fire Ins. Co. of Pittsburgh, PA,
   No. 14-0892(RC), 2015 WL 5449791 (D.D.C. Sept. 16, 2015) ......11, 22, 23, 41

Campion v. Old Republic Home Prot. Co., Inc.,
   No. 09-cv-748, 2010 WL 2724278 (S.D. Cal. July 7, 2010)............................40

Cananwill, Inc. v. EMAR Group, Inc.,
   250 B.R. 533 (M.D.N.C. 1999) ..........................................................18

Center State Farms v. Campbell Soup Co.,
   58 F.3d 1030 (4th Cir. 1995) ...............................................................14

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)........................................................................10, 15, 16

*DirecTV, Inc. v. Tolson*,
    498 F. Supp. 2d 784 (E.D.N.C. 2007) ...............................................27

*Doe v. Blue Cross Blue Shield of Maryland, Inc.*,
    173 F. Supp. 2d 398 (D. Md. 2001) ....................................................39

*Doe v. Obama*,
    631 F.3d 157 (4th Cir. 2011) .......................................................10, 15

*Dornberger v. Metro. Life Ins. Co.*,
    961 F. Supp. 506 (S.D.N.Y. 1997) ..............................................37, 38

*E.M. v. N.Y. City Dep't of Educ.*,
    758 F.3d 442 (2d Cir. 2014) ................................................................24

*Engel v. Scully & Scully, Inc.*,
    279 F.R.D. 117 (S.D.N.Y. 2011) ........................................................14

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,
    166 F.3d 642 (4th Cir. 1999) ..............................................................13

*Excelsior Insurance Co. v. Pomona Park Bar & Package Store*,
    369 So.2d 938 (Fla. 1979) ..................................................................33

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................13

*Graham v. Catamaran Health Sols., LLC*,
    No. 4:14-CV-00589-BRW (W.D. Ark. Oct. 1, 2015) ........................11

*Graham v. National Union Fire Ins. Co. of Pittsburgh, PA*,
    No. 4:14-CV-00589-BRW (E.D. Ark. Oct. 1, 2015).........................21

*Hammer v. Sam's East, Inc.*,
    754 F.3d 492 (8th Cir. 2014) ..............................................................25

*Hanak v. Taylor*,
    25 F.3d 1039 (4th Cir. 1994) ..............................................................15

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)..................................................................25

*Helfaer v. John Hancock Mut. Life Ins. Co.*,
274 N.Y.S.2d 494 (N.Y. Sup. Ct. 1966) ...............................34

*Hill v. State Farm Mutual Ins. Co.*,
375 S.E.2d 727 (Va. 1999) ....................................................32

*Home Indem. Co. v. Hoechst Celanese Corp.*,
494 S.E.2d 768 (N.C. App. 1998)..........................................18

*Hospira Inc. v. Alphagary Corp.*,
671 S.E.2d 7 (N.C. App. 2009)...............................................47

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..................................................................29

*Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*,
215 S.E.2d 162 (N.C. App. 1975)...........................................18

*Impress Commc'ns v. Unumprovident Corp.*,
335 F. Supp. 2d 1053 (C.D. Cal. 2003) .................................39

*In re Carter*,
553 F.3d 979 (6th Cir. 2009) .................................................25

*In re Crawford*,
517 S.E.2d 161 (N.C. App. 1999)...........................................28

*In re Matter of La. Health Serv. & Indem. Co.*,
749 So.2d 610 (La. 1999) .........................................................7

*In re Motor Fuel Temperature Sales Litigation*,
MDL No. 1840, No. 07-1840-KHV, 2012 WL 1672994 (D. Kan. May
14, 2012) ..................................................................................14

*James B. Taylor Family Ltd. P'ship v. Bank of Granite*,
762 S.E.2d 531 (N.C. App. 2014).........................................47

*Karpel v. Inova Health Sys. Servs.*,
134 F.3d 1222 (4th Cir. 1998) ...............................................43

*Latta v. Farmers County Mutual Fire Ins. Co.*,
 313 S.E.2d 214 (N.C. App. 1984)................................................................30, 31

*Lemy v. Direct Gen. Fin. Co.*,
 885 F. Supp. 2d 1265 (M.D. Fla. 2012).......................................................34, 35

*Levine v. Blue Shield of Cal.*,
 189 Cal. App. 4th 1117 (2010) ...........................................................................43

*Lloyd Capital Corp. v. Pat Henchar, Inc.*,
 80 N.Y.2d 124 (N.Y. 1992) .................................................................................38

*Long Term Care Partners, LLC v. United States*,
 516 F.3d 225 (4th Cir. 2008) ..............................................................................25

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)..................................................................................*passim*

*Maio v. Aetna, Inc.*,
 221 F.3d 472 (3d Cir. 2000) ...............................................................................39

*Medina v. Safe-Guard Prods., Inc.*,
 164 Cal. App. 4th 105 (Cal. App. Ct. 2008)......................................................20

*Muth v. United States*,
 1 F.3d 246 (4th Cir. 1993) ..................................................................................43

*Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*,
 Nos. 1:04CV00820, 1:04CV01079, 2006 WL 3848697 (M.D.N.C. Dec.
 29, 2006) .............................................................................................................37

*Pensions Plus, Inc. v. Gallagher Benefit Servs., Inc.*,
 No. 08 Civ. 11341, 2011 WL 1345382 (S.D.N.Y. Mar. 29, 2011)....................38

*Pitt County v. Hotels.com, L.P.*,
 553 F.3d 308 (4th Cir. 2009) ..........................................................12, 47, 48, 49

*Plemmons v. City of Gastonia*,
 302 S.E.2d 905 (N.C. App. 1983).......................................................................28

*Plyler v. Moore*,
 129 F.3d 728 (4th Cir. 1997) ..............................................................................14

*Posner v. U.S. Fidelity & Guaranty Co.*,
226 N.Y.S.2d 1011 ................................................................34

*Pye v. United States*,
269 F.3d 459 (4th Cir. 2001) ..............................................14

*Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*,
No. 06 Civ. 4624, 2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ...............38, 39

*Raines v. Byrd*,
521 U.S. 811 (1997)..............................................................26

*Richardson v. Bank of America, N.A.*,
643 S.E.2d 410 (N.C. App. 2007).........................................18, 19, 20, 30

*Robinson v. Am. Honda Motor Co.*,
551 F.3d 218 (4th Cir. 2009) ..............................................12, 18, 31

*Robinson v. Sec. Life & Annuity Co.*,
79 S.E. 681 (N.C. 1913)........................................................18, 31

*Rowell v. City of Hickory*,
341 Fed. App'x 912 (4th Cir. 2009) ....................................36, 44

*Snider Int'l Corp. v. Town of Forest Heights*,
906 F. Supp. 2d 413 (D. Md. 2012)....................................14

*Southern Walk at Broadlands Homeowners Ass'n, Inc. v. Openband at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ..............................................41

*Stainback v. Investor's Consol. Ins. Co.*,
306 S.E.2d 532 (N.C. App. 1983)........................................29, 36

*State v. Moore*,
395 S.E.2d 124 (N.C. 1990) ................................................28

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)..............................................................13, 15

*Sun Life Assurance Co. of Canada v. Moran*,
Nos. CV-08-0629-PHX-GMS, CV-08-0632-PHX-GMS, 2009 WL
2450443 (D. Ariz. Aug. 11, 2009)......................................25

*Teras International Corp. v. Gimbel*,
  No. 13-CV-6788 (VEC), 2014 WL 7177972 (S.D.N.Y. Dec. 17, 2014) ...........14

*The Harrison Agency, Inc. v. Pacific Mut. Life Ins. Co.*,
  703 F. Supp. 441 (W.D.N.C. 1989) ......................................................29, 30, 36

*Trana Discovery, Inc. v. S. Research Inst.*,
  No. 5:13-CV-848-F, 2014 WL 5460611 (E.D.N.C. Oct. 27, 2014)..................51

*United States v. Edwards*,
  666 F.3d 877 (4th Cir. 2011) ...............................................................43

*United States v. Gambler's Supply, Inc.*,
  925 F. Supp. 658 (D.S.D. 1996) ........................................................25

*United States v. Graham*,
  608 F.3d 164 (4th Cir. 2010) ...............................................................28

*United Transp. Union Local Unions 385 & 77 v. Metro-North Commuter
  R.R. Co.*,
  No. 94 Civ. 2979 (RWS), 1995 WL 634906 (S.D.N.Y. Oct. 30, 1995) ...........25

*Van Gilder v. Bullen*,
  74 S.E. 1059 (N.C. 1912)......................................................................37

*Velasco v. Gov't of Indonesia*,
  370 F.3d 392 (4th Cir. 2004) ...............................................................13

*Vogel v. Reed Supply Co.*,
  177 S.E.2d 273 (N.C. 1970) ...............................................................27

*Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA*,
  No. 2:14-CV-00667-SVW (C.D. Cal. Oct. 24, 2014) ...........................11, 20, 40

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) .............................................................26

*Warth v. Seldin*,
  422 U.S. 490 (1975)...........................................................................24

*Watson Elec. Constr. Co. v. Summit Cos., LLC*,
  587 S.E.2d 87 (N.C. App. 2003).........................................................47

*Watson v. National Union Fire Ins. Co. of Pittsburgh, PA*,
   No. 14-1312, 2015 WL 5714635 (E.D. La. Sept. 29, 2015) ............11, 21, 42, 44

*Weaver v. Aetna Life Ins. Co*.,
   No. 3:08-cv-00037, 2008 WL 4833035 (D. Nev. Nov. 4, 2008) ......................40

*Weller v. Dep't of Soc. Servs. for City of Baltimore*,
   901 F.2d 387 (4th Cir. 1990) ...........................................................................36

*Wilkerson v. Christian*,
   No. 1:06cv00871, 2008 WL 483445 (M.D.N.C. Feb. 19, 2008) ................50, 51

*Williams v. National Union Fire Ins. Co. of Pittsburgh, PA*,
   No. 1:14-CV-309-TWT, 2014 WL 4386463 (N.D. Ga. Sept. 4, 2014) ......*passim*

*Youngblood v. Metro. Life Ins. Co*.,
   No. 1:10-CV-105, 2011 WL 4747919 (W.D.N.C. Oct. 7, 2011) ......................18

## STATUTES

Ark. Code § 23-79-118 ........................................................................................21

D.C. Code § 31-4712(d)(2) ..................................................................................22

Fla. Stat. § 627.418(1)....................................................................................33, 34

N.C. Gen. Stat. § 58-50-15 ...........................................................................*passim*

N.C. Gen. Stat. § 58-51-75 ...........................................................................*passim*

N.C. Gen. Stat. § 58-51-95 ...........................................................................*passim*

N.C. Gen. Stat. § 58-258(b) ..........................................................................29, 30

N.C. Gen. Stat. § 75-1.1 ................................................................................47, 49

N.Y. Ins. Code, § 3103(a) ...................................................................................34

O.C.G.A. § 33-34-12(b) .....................................................................................35

O.C.G.A. § 33–24–12(a) .....................................................................................22

Va. Code Ann. § 38.2-318(A)...............................................................................32

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 ...............................................................................*passim*

## **JURISDICTIONAL STATEMENT**

Defendants-Appellees agree with the jurisdictional statement on page 1 of Plaintiffs-Appellants' Opening Brief, which discusses the statutory basis of jurisdiction in the District Court and this Court's statutory basis for appellate jurisdiction.  But, as discussed more fully below, Defendants-Appellees dispute that Plaintiffs-Appellants have alleged facts which, if true, establish an injury-in-fact under Article III.  As a result, the District Court rightly concluded that there is no federal jurisdiction over Plaintiffs-Appellants' complaint.

## <u>COUNTER-STATEMENT OF THE ISSUES</u>

**<u>ISSUE 1</u>**:    Whether the District Court correctly determined that Plaintiffs-Appellants lacked standing to pursue their claims because (a) Plaintiffs-Appellants never suffered a covered loss, made a claim for benefits under the policies, or had any such claim denied; (b) the subject insurance policies were valid and enforceable as a matter of law under N.C. Gen. Stat. § 58-50-15(b) and North Carolina common law; and (c) the 2005 and 2009 membership fee increases did not violate either N.C. Gen. § 58-51-95 or North Carolina common law.

**<u>ISSUE 2</u>**:    Whether the District Court's dismissal of the First Amended Complaint was proper under 12(b)(6) where (a) Plaintiffs-Appellants never suffered a covered loss, made a claim for benefits under the policies, or had any such claim denied; (b) the polices are valid and enforceable as a matter of law under N.C. Gen. Stat. § 58-50-15(b) and North Carolina common law; (c) Plaintiffs-Appellants never objected to the alleged fee increases they willingly paid for years until filing this suit; and (d) the 2005 and 2009 membership fee increases did not violate either N.C. Gen. § 58-51-95 or North Carolina common law.

**<u>ISSUE 3</u>**:    Whether the face of the First Amended Complaint discloses that Plaintiffs-Appellants' claims are time-barred.

## STATEMENT OF THE CASE

### I.    Background

Plaintiffs-Appellants Mario Petruzzo ("Petruzzo") and Jeffrey and Kimberly Bush (the "Bushes") (collectively, "Plaintiffs") allege that they are the victims of an "illegal scheme" pursuant to which Defendants-Appellees ("Defendants") marketed and issued "illusory" and "virtually worthless" group disability insurance covering North Carolina residents who enrolled in a supplemental benefits program (the "Program").  *See*, *e.g.*, First Amended Complaint ("FAC"), ¶¶ 117, 120-122, 192-193 (J.A. 117, 119, 140-41).  Specifically, Plaintiffs allege that the disability policies covering Program members ("the Policies") are void *ab initio* because they allegedly did not comply with certain provisions of the North Carolina Insurance Code relating to the types of groups eligible to receive such coverage.  *See*, *e.g.*, FAC, ¶¶ 117, 120-122, 192-193 (J.A. 117, 119, 140-41).  Plaintiffs also allege that in 2005 and 2009, the "program fees" they paid for the Program were increased to amounts that had not been approved by the North Carolina Department of Insurance.  *See, e.g.*, FAC, ¶¶ 45-46, 69, 96-97 (J.A. 97, 101-02, 111).

Based on those allegations, Plaintiffs claim that they and the putative class members are entitled to a refund of all program fees paid over the past 14 years,

treble damages, punitive damages, injunctive relief, and attorneys' fees.  FAC, ¶¶

161(i), 194, 212-218 and Prayer for Relief (J.A. 129, 141, 144-45, 147).

On May 22, 2015, the District Court (Flanagan, D.J.) dismissed the First

Amended Complaint upon finding that Plaintiffs lacked standing to sue because (1)

the Policies were valid and enforceable under both the statutory and common law

of North Carolina, notwithstanding any alleged regulatory violations; and (2)

Plaintiffs conceded they did not submit a claim for benefits under the Policies or

have any such claim denied.  (J.A. 856-78).  The District Court also found that

Plaintiffs lacked standing to assert a claim for alleged "premium," or membership

fee, increases.  (*Id*.)

This appeal arises from the District Court's May 22, 2015 Order.

## II.    Facts Alleged In The First Amended Complaint

In 1999 and 2000, respectively, the Bushes and Petruzzo enrolled in the

Program, which provided (1) accidental permanent and total disability insurance,

initially underwritten by Federal Insurance Company, and later, in 2005, by

Defendant-Appellee National Union Fire Insurance Company of Pittsburgh, Pa.

("National Union"); and (2) emergency accident and sickness medical expense

coverage underwritten by Defendant-Appellee Virginia Surety Company, Inc.

("Virginia Surety").  FAC, ¶¶ 37-39, 44, 65-67, 71, 89, 103-104, 113 (J.A. 95, 97,

101-02, 109, 113, 116).  Plaintiffs allege the Policies providing these benefits were

issued to trusts, which held the Policies for the benefit of the group of Program members whose only unifying characteristic was a desire to enroll in the Program to receive the supplemental benefits available through enrollment. *See* FAC, ¶¶ 84, 89, 173, 186-188 (J.A. 105, 109, 134-35, 138-39). Plaintiffs contend this arrangement violates North Carolina law. Specifically, they alleged the Policies were void *ab initio* because the trusts were not eligible to receive the Policies, *i.e.*, that the Policies were not issued to a "valid blanket group" under N.C. Gen. Stat. § 58-51-75(a). *See, e.g.*, FAC, ¶¶ 103-122, 189-190 (J.A. 113-20, 139).[1]

Notwithstanding Plaintiffs' contention, the First Amended Complaint discloses that Plaintiffs received the benefit of their insurance coverage without interruption from the date they enrolled in the Program through the date they filed the instant lawsuit. *See generally*, FAC (J.A. 84-158). Plaintiffs do not allege that they ever incurred a covered loss. (*See id.*) Nor do they allege that they ever submitted a claim for benefits, let alone that a claim was wrongfully denied. (*See id.*) In fact, Plaintiffs' proposed class expressly excludes persons with "[a]ctual

---

[1] Plaintiffs' First Amended Complaint suggests other terms of the Policies are subject to challenge, *see* FAC, ¶¶ 51, 74, 102, 135, 136, 144, 173 (J.A. 98, 103, 113, 122-23, 134-35), but Plaintiffs did not raise those before the District Court (*see* J.A. 819-40) and do not argue them here. *See* Opening Brief. Therefore, they have waived any argument based on those allegations. *See Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) ("An appellant must raise every issue that he wishes to press in his opening brief. If the appellant fails to address an issue there, then we will deem the issue waived or abandoned. We have repeated this rule so often that it might rightfully be termed the best-established rule in appellate procedure.") (citations omitted).

5

identifiable claims for disability benefits that have already arisen that may be payable under the terms of said disability insurance policies." FAC, ¶ 159(e) (J.A. 126-27).

In addition, the First Amended Complaint reveals the following critical facts:

***First***, on October 27, 2004, almost eight years before filing this action, Plaintiff Petruzzo received a letter explicitly "inform[ing]" him that his policy was issued to a trust. FAC, ¶¶ 43-44 (J.A. 96-97). The letter included an "Accidental Protection Plan Program Summary" and "Accident Protection Plan Benefit Description," both of which detailed the terms of Petruzzo's coverage and referred to a number of governing documents, including the Master Policy. (J.A. 746-61.)[2]

***Second***, in 2005 and 2009, Plaintiffs were notified that their membership fees were being increased, the charges were reflected on their credit card statements, and they elected to keep their Policies in force after receiving notice of the increases. *See, e.g.*, FAC, ¶¶ 41-46, 52, 68-69, 76 (J.A. 96-98, 101-02, 103).

***Third***, Defendants promptly responded to Plaintiffs' requests for information about their Policies. *See, e.g.*, FAC, ¶¶ 47, 70 (J.A. 97, 102).

_____

[2] Although Plaintiffs did not attach the October 27, 2004 letter to the First Amended Complaint, the District Court appropriately considered it in connection with the motion to dismiss as "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quotations and citation omitted). Plaintiffs have not challenged this aspect of the District Court's ruling.

6

***Finally***, although Plaintiffs allege that they were "never … provided with a copy of [their] policy series … or [the] Master Policy,"[3] they do not allege that they ever requested a copy of those documents, or any facts regarding why the detailed Program Summary did not provide sufficient information about the terms of the Program. *See generally*, FAC (J.A. 84-158).[4]

## III. Virginia Surety's Motion To Dismiss

Petruzzo filed the original class action complaint on March 6, 2012. (Dkt. No. 1.) Virginia Surety was added as a defendant on September 12, 2014 in the First Amended Complaint. (J.A. 84-158.)

On November 14, 2014, Virginia Surety filed a motion to dismiss pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.[5] (J.A. 310-33.) In the motion, Virginia Surety demonstrated that Plaintiffs' theories are foreclosed by N.C. Gen. Stat. § 58-50-15(b). (*Id.*) It also renewed the argument, initially rejected by the District Court, that North Carolina common law required enforcement of the Policies. (*See id.*) Finally, Virginia Surety explained that Plaintiffs' claims are time-barred. (*See id.*) On December 11, 2014, Plaintiffs

---

[3] FAC, ¶¶ 51, 74 (J.A. 98, 103).

[4] Nor would it be common for Plaintiffs to receive the master policy. *See, e.g.*, *In re Matter of La. Health Serv. & Indem. Co.*, 749 So.2d 610, 614 (La. 1999) (explaining that "[m]embers of a group insurance plan are generally not supplied with a complete copy of the master policy … but are instead given a certificate of insurance that describes the master policy").

[5] Plaintiffs incorrectly state that Virginia Surety's motion to dismiss was based solely upon Rule 12(b)(1). (*See* J.A. 310-33.)

filed their opposition to Virginia Surety's motion, and on January 20, 2015,

Virginia Surety filed a reply in support of its motion.  (J.A. 819-38, 845-55.)

## IV.   The District Court's May 22, 2015 Order

On May 22, 2015, the District Court granted Virginia Surety's motion to

dismiss and dismissed the First Amended Complaint.  (J.A. 856-78.)   After

discussing the relevant facts and applicable legal standards, the District Court held:

> [P]laintiffs lack Article III standing to prosecute their
> claims … .  Plaintiffs have suffered neither a concrete nor
> an imminent injury.  The [Program], consisting of both
> the [d]isability [b]enefit and [h]ealth [b]enefit, is valid
> and enforceable under North Carolina law.   Had
> [P]laintiffs made a claim, the underwriter would have
> been obligated to process it in accordance with the terms
> thereof.  Plaintiffs have never made a claim, and there is
> no allegation in the amended complaint that [P]laintiffs
> currently have any identifiable claim for insurance
> benefits.

(J.A. 874.)  The District Court explained its analysis as follows:

First, regarding the enforceability of the Policies, the District Court

discussed N.C. Gen. Stat. § 58-50-15(b), which provides that "[a] policy delivered

or issued for delivery to any person in this State in violation of Articles 50 through

55 of this Chapter shall be held valid but shall be construed as provided in Articles

50 through 55 of this Chapter."   (*See* J.A. 868-72.)   As the District Court

explained, "[t]he language of § 58-50-15(b) plainly states that policies that violate

any of the statutory terms set forth in [Articles 50 through 55 of the North Carolina

Insurance Code] are valid, but the policy provisions in conflict with the statutory

terms are of no effect."  (J.A. 868-69.)

8

Second, regarding the allegedly unauthorized membership fee increases, the District Court held that Plaintiffs had not adequately alleged an impermissible fee increase. (J.A. 872.) The District Court also noted that Plaintiffs complained "that the premiums were 'excessive,'" but concluded the First Amended Complaint does not allege that the insurance premiums charged "were excessive in comparison to the benefits offered thereunder." (J.A. 872 n.17.)

Given that Plaintiffs' claims against all Defendants are predicated on the same theories, namely, that the Policies are void *ab initio* because they were not issued to a "lawful blanket group" and because Plaintiffs allegedly paid unauthorized fee increases, the District Court concluded "[P]laintiffs lack standing to sue any defendant in this action under Article III of the United States Constitution." (J.A. 878.)

On June 18, 2015, Plaintiffs filed a Notice of Appeal. (J.A. 881-83.)

## SUMMARY OF ARGUMENT

The District Court properly determined that this action cannot proceed because Plaintiffs have not suffered a cognizable injury and thus lack standing to sue under Article III of the United States Constitution. The fundamental premise of Plaintiffs' claims is that the Policies were void *ab initio* because they allegedly were not issued to an eligible group. That premise fails as a matter of law under the plain and unambiguous language of N.C. Gen. Stat. § 58-50-15(b), which

renders the Policies valid and enforceable notwithstanding the regulatory violations Plaintiffs allege.

But even more fundamentally, Plaintiffs have specifically acknowledged that they were not harmed at all by any supposedly illusory insurance coverage, because they do not and cannot allege they experienced any accident that would have triggered their right to collect under the Policies. *See generally*, FAC (J.A. 84-158). To the contrary, they have specifically defined the class they wish to represent as *excluding* anyone who actually might have had a claim, which they expressly concede *might* have been paid. FAC, ¶ 159(e) (J.A. 127). Simply put, Plaintiffs' claim of illusory coverage masks the contingent and speculative nature of their alleged harm. Their claim is that *if* they had, in fact, experienced an incident triggering coverage, their insurer *may* not have paid when they sought compensation. Under settled U.S. Supreme Court and Fourth Circuit law, such conjectural, hypothetical injury does not engage the jurisdiction of the federal courts. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Doe v. Obama*, 631 F.3d 157, 163 (4th Cir. 2011).

Indeed, Plaintiffs' premise has been rejected by several other federal courts in virtually identical lawsuits. *See Williams v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:14-CV-309-TWT, 2014 WL 4386463 (N.D. Ga. Sept. 4,

10

2014); *Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:14-CV-00667-SVW (CWx) (C.D. Cal. Oct. 24, 2014) (J.A. 336-341); *Campbell v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-0892(RC), 2015 WL 5449791 (D.D.C. Sept. 16, 2015); *Watson v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-1312, 2015 WL 5714635 (E.D. La. Sept. 29, 2015); and *Graham v. Catamaran Health Sols., LLC*, No. 4:14-CV-00589-BRW (W.D. Ark. Oct. 1, 2015).

Plaintiffs' contention that they have standing to sue for alleged "unauthorized premium increases" under N.C. Gen. Stat. § 58-51-95 is equally meritless. First, there is no private right of action to sue for alleged violations of N.C. Gen. Stat. § 58-51-95. Second, because Plaintiffs never objected to the alleged increases, and willingly paid them for years without objection, they are precluded from seeking recovery for those increases now. Finally, § 58-51-95(f) only regulates the amount of premium an insurer can charge for its policies. Nothing in § 58-51-95(f) purports to regulate membership fees charged by companies such as Defendant HealthExtras, Inc. ("HealthExtras") that are not insurers. Nor does the fact that Plaintiffs received, *inter alia*, insurance coverage as one of the benefits of their membership fees render the membership fee charged by HealthExtras subject to § 58-51-95(f).

Because Plaintiffs do not (and cannot) allege facts that establish standing or a viable claim against any of the Defendants, the District Court properly dismissed the First Amended Complaint under Rule 12(b)(1) or Rule 12(b)(6).

Dismissal of Plaintiffs' claims also was correct for another independent reason: Plaintiffs' claims are time-barred.

The District Court's order should be affirmed.

## ARGUMENT

## I.    Standard Of Review

This Court reviews *de novo* dismissals for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (citation omitted); *Robinson v. Am. Honda Motor Co.,* 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted). "In reviewing dismissal," the Court is "not limited to evaluation of the grounds offered by the [D]istrict [C]ourt to support its decision, but … may affirm on any grounds apparent from the record." *Pitt County,* 553 F.3d at 311 (quotations and citation omitted). Thus, this Court may affirm dismissal because Plaintiffs lack standing under Rule 12(b)(1) and because they fail to state a claim upon which relief can be granted under Rule 12(b)(6). *See id*.

12

## II.    The District Court Properly Dismissed The First Amended Complaint Because Plaintiffs Lack Article III Standing To Bring This Action.

### A.    Plaintiffs Must Allege A "Concrete And Particularized" Injury To Satisfy Their Burden Of Pleading Standing.

Article III of the U.S. Constitution limits federal courts to deciding only actual "cases" and "controversies." *Lujan*, 504 U.S. at 560. "This requirement assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) (internal quotation omitted). The plaintiff bears the burden to

> show (1) it has suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000). The party invoking federal jurisdiction has the burden of establishing these elements. *Lujan*, 504 U.S. at 561; *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp*., 166 F.3d 642, 647 (4th Cir. 1999).

In resolving a challenge to standing, a district court may disregard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment. *See Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (collecting cases).

Importantly, "[s]tanding is a ***threshold*** jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts'

judicial powers under the Constitution of the United States." *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001) (emphasis added). Accordingly, standing can be raised at any time, including by motion to dismiss under Rule 12. *See Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997); *Center State Farms v. Campbell Soup Co*., 58 F.3d 1030, 1038 (4th Cir. 1995). It follows that even if Plaintiffs' lack of standing would also form the basis of "one or more affirmative defenses,"[6] the District Court properly addressed Plaintiffs' failure to allege any concrete and particularized injury in granting the motion to dismiss.[7]

Of particular relevance here (and as noted above), a plaintiff cannot merely theorize potential injuries to confer jurisdiction on federal courts. To the contrary, the plaintiff must establish that his injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Speculative assertions of potential injury

---

[6] *See* Opening Brief at 28.

[7] The cases Plaintiffs cite at pages 28-30 of their Opening Brief are inapposite. First, *Engel v. Scully & Scully, Inc*., 279 F.R.D. 117, 124 (S.D.N.Y. 2011) and *Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 423 (D. Md. 2012), involved affirmative defenses that required resolution of issues of fact. Of course, there is no issue of fact here, because statutory interpretation is a question of law for the court. *See, e.g., Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010). *In re Motor Fuel Temperature Sales Litigation*, MDL No. 1840, No. 07-1840-KHV, 2012 WL 1672994 (D. Kan. May 14, 2012), also does not help Plaintiffs, because the court actually found that the plaintiff lacked standing to pursue certain claims because the conduct he alleged did not fall within the applicable statute. *Id*. at *5-6. Finally, *Teras International Corp. v. Gimbel*, No. 13-CV-6788 (VEC), 2014 WL 7177972 (S.D.N.Y. Dec. 17, 2014), also is inapposite, as it made the unremarkable—and inapplicable—observation that the *in pari delicto* defense is separate and apart from the standing inquiry. *Id*. at *3.

14

repeatedly have been rejected as insufficient to confer standing. *Clapper*, 133 S. Ct. at 1147-49; *Lujan*, 504 U.S. at 565 n.2; *Obama*, 631 F.3d at 163; *Hanak v. Taylor*, 25 F.3d 1039, at *2 (4th Cir. 1994) (Table). In other words, injury based on a "speculative chain of possibilities" does not satisfy Article III. *Clapper*, 133 S. Ct. at 1150; *see also Obama*, 631 F.3d at 163.

Here, Plaintiffs' assertion of injury is precisely the kind of speculative chain of possibilities that has been rejected as falling short of the "irreducible constitutional minimum." *Lujan*, 555 U.S. at 560-61. Plaintiffs do not assert an ***actual*** injury. Plaintiffs have never been injured in a covered accident, never made claims for benefits under the Program, and have never been denied benefits under the Program. Instead, Plaintiffs' claims are grounded on their speculative assertion that ***if*** they become disabled at some point in the future, and ***if*** they seek benefits, their claims ***might*** be denied. In fact, their proposed class expressly excludes anyone with "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of [the] disability insurance policies." FAC, ¶ 159(e) (J.A. 127). Thus, Plaintiffs distinguish themselves from other policyholders, not included within their proposed class, who actually suffered an incident triggering potential coverage and who may well have recovered under their Policies. Accordingly, Plaintiffs have expressly pleaded that ***had*** they been injured, they ***might*** have recovered. This is a far cry from the kind of "actual"

15

injury that confers jurisdiction on the federal courts, and it also is well short of the kind of "threatened injury [that is] certainly impending" that the Supreme Court has set as the standard for potential injury. *Clapper*, 133 S. Ct. at 1147.

Even if one were to look beyond the fact that Plaintiffs have not asserted any actual or imminent injury, Plaintiffs have not alleged a plausible, non-speculative injury.

**B.    The Policies Are Valid And Enforceable Under North Carolina Law.**

The District Court correctly held that the Policies are valid and enforceable even if, as Plaintiffs allege, they do not comply with certain insurance regulations.

Plaintiffs contend they suffered injury sufficient to confer standing by paying for Policies that were void *ab initio*.  Specifically, Plaintiffs allege the Policies were void *ab initio* because they were issued to trusts that allegedly were ineligible to receive them under N.C. Gen. Stat. § 58-51-75(a), which enumerates categories of permissible "blanket accident and health" policyholders.  *See, e.g.*, FAC, ¶¶ 119-120 (policies issued to unlawful blanket group) (J.A. 118-19).[8]

---

[8] The First Amended Complaint also alleges that the Policies are illegal and void *ab initio* under Article 51 because they contain subrogation provisions prohibited by 11 N.C.A.C. 12.0319.4.  FAC, ¶¶ 116-17 (J.A. 117).  However, Plaintiffs have not addressed that issue before this Court (*see* Opening Brief) and thus have waived it on appeal.  *See, e.g., Brown*, 785 F.3d at 923.  Nonetheless, as the District Court explained, those allegations fail, because they amount to claims that Defendants violated Article 51 of the Insurance Law and therefore fall within the purview of N.C. Gen. Stat. § 58-50-15(b).  (J.A. 870-71.)

Plaintiffs assert that issuing the Policies to the trusts violates § 58-51-75(a) because the trusts are not an "incorporated or unincorporated association of persons having a common interest or calling, which association shall be deemed the policyholder, having not less than 25 members, and formed for purposes other than obtaining insurance, covering all of the members of such association." *See, e.g.*, FAC, ¶¶ 119-120 (J.A. 118-19).

As the District Court rightly held, even assuming the truth of those allegations, the Policies remain enforceable under N.C. Gen. Stat. § 58-50-15(b). That statute provides that "[a] policy delivered or issued for delivery to any person in this State in violation of Articles 50 through 55 of this Chapter ***shall be held valid*** but shall be construed as provided in Articles 50 through 55 of this Chapter." N.C. Gen. Stat. § 58-50-15(b) (emphasis added). Thus, under § 58-50-15(b), even if Plaintiffs' Policies do not comply with Article 51 Insurance Law, they are not void and Plaintiffs did not pay for unenforceable coverage. Instead, the Policies are valid and enforceable as a matter of law, and Plaintiffs received the coverage for which they paid.

In addition to § 58-50-15(b), the District Court also grounded its ruling in North Carolina common law, which holds that "insurance contracts are not void simply because they violate a provision of the Insurance Law." (J.A. 877.) In doing so, the District Court noted that its prior ruling to the contrary was "not

17

correct." (*Id.*)  As the District Court correctly explained, for over a century, North Carolina law has provided that an insurer's alleged non-compliance with insurance regulations does not render an insurance policy void.  *See Robinson v. Sec. Life & Annuity Co*., 79 S.E. 681, 684 (N.C. 1913); *Cananwill, Inc. v. EMAR Group, Inc*., 250 B.R. 533, 555-57 (M.D.N.C. 1999); *Youngblood v. Metro. Life Ins. Co*., No. 1:10-CV-105, 2011 WL 4747919, at *5 (W.D.N.C. Oct. 7, 2011); *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp*., 215 S.E.2d 162, 166 (N.C. App. 1975).  For example, in *Robinson*, an insurer sought to enforce the terms of a policy that failed to comply with North Carolina Insurance Law.  79 S.E. at 683.  The insurer argued the policy was unlawful and could not be enforced.  *Id*.  The court rejected that argument, holding it would be unjust to render the policy void, notwithstanding its potential illegality.  *Id*. at 684.  More recently, the North Carolina Court of Appeals held that a policy on a form that had not been approved by the Department of Insurance is not void, even when approval is statutorily required.  *Home Indem. Co. v. Hoechst Celanese Corp*., 494 S.E.2d 768, 772 (N.C. App. 1998).  Thus, North Carolina common law is as clear as § 58-50-15(b): regulatory noncompliance does not render an insurance policy void *ab initio*.

As the District Court ultimately concluded, *Richardson v. Bank of America, N.A.*, 643 S.E.2d 410 (N.C. App. 2007), is not to the contrary.  There, the court was faced with a type of insurance that was specifically prohibited by North Carolina

18

statute. *Id*. at 425. The court held that allowing enforcement of a type of insurance expressly barred by statute would be contrary to North Carolina law, and thus refused to treat the insurance as enforceable. *Id*. Thus, *Richardson* is little more than an application of the accepted rule that specified classes of contracts that contravene established public policy are invalid.

Here, unlike the coverage at issue in *Richardson*, which involved a type of insurance illegal under North Carolina law, there is no dispute that permanent disability coverage is permissible in North Carolina (just as it is in virtually every state). Moreover, the coverage at issue in *Richardson* did not fall within the type of insurance covered by N.C. Gen. Stat. § 58-50-15(b). Rather, *Richardson* dealt with Article 57 of the Insurance Code, a law that is not implicated by any allegation in the First Amended Complaint. Section 58-50-15(b) applies only to alleged violations of Articles 51 through 55 of the Insurance Code, and the Insurance Code does not have a provision similar to § 58-50-15(b) that operates when a policy allegedly violates Article 57. Thus, the *Richardson* court's "failure to mention § 58-50-15(b)" cannot, as Plaintiffs contend, have any implications here. Opening Brief at 32. Because § 58-50-15(b) did not apply to the conduct at issue in *Richardson*, there was no reason for the court to "mention" it, much less apply it. Accordingly, even beyond the fact that *Richardson* dealt with a different portion of the Insurance Law, its holding is inapposite here.

19

## C.  Federal Courts Have Dismissed Identical Lawsuits Relating To The Same Program Because The Policies Are Valid And Enforceable As A Matter Of Law.

Notably, the District Court is not alone in enforcing the Policies.  Other federal courts have dismissed identical lawsuits relating to the same Program because the Policies are valid and enforceable as a matter of law in states across the country.  North Carolina is not alone in adopting the sensible rule that an insurance policy is valid notwithstanding any supposed technical regulatory violation by the insurer.

First, in *Waiserman v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 2:14-CV-00667-SVW (CWx) (C.D. Cal. Oct. 24, 2014), the court rejected Plaintiffs' "void *ab initio*" theory, reasoning that although the defendants allegedly "created a sham trust to mask their dealings" and accordingly "violated a broad[] swath of state law," "California law dictates that the defendants' program is enforceable."  (J.A. 338.)  Accordingly, the court concluded that "[b]ecause the program is enforceable and [the plaintiff] failed to submit a claim for benefits, he suffered no injury in-fact.  Thus, he lacks standing to sue in federal court."  (*Id*.)  *See also Medina v. Safe-Guard Prods., Inc*., 164 Cal. App. 4th 105, 111 (Cal. App. Ct. 2008) ("holding an insurance contract void because the insurer was not licensed is about the worst possible remedy for the illegality of the insurer's unlicensed status.  To do so would be incredibly harmful to consumers.").

20

Second, in *Watson v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 14-1312, 2015 WL 5714635 (E.D. La. Sept. 29, 2015), the court rejected the allegation that the Policies were void *ab initio* because, *inter alia*, they were not issued to a lawful blanket group, reasoning that "the insurers would have been obligated to pay any covered claims that plaintiffs made during the policy period if plaintiffs had made such claims." *Id*. at *8.

Third, in *Graham v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 4:14-CV-00589-BRW (E.D. Ark. Oct. 1, 2015), the court dismissed the same "void *ab initio*" claims in light of Ark. Code § 23-79-118, which provides:

> An insurance policy, rider, or endorsement issued and otherwise valid that contains any condition or provision not in compliance with state law is not rendered invalid but shall be construed and applied according to the conditions and provisions that would have applied had the policy, rider, or endorsement been in full compliance with state law.

As the court explained, under this statutory language, "[p]laintiff's policy was not worthless—if he had made a valid claim under the policy, Defendants would have been obligated to pay him benefits." *Id*. at *4.

Fourth, in *Williams v. National Union Fire Insurance Co. of Pittsburgh, P.A.*, No. 1:14-cv-309-TWT, 2014 WL 4386463, the plaintiffs alleged that the Policies were "illegal," "illusory," and "void" because they were placed into "insurance trusts in place of a lawful blanket group" and the defendants unlawfully increased their program fees. Williams Am. Compl., ¶¶ 19, 45, 99, 108 (J.A. 771,

780, 799, 800-01).  The court rejected those claims under O.C.G.A. § 33–24–12(a), which provides,

> Any insurance policy ... which contains any condition or provision not in compliance with the requirements of [Title 33, which governs insurance policies] shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy ... been in full compliance with [Title 33].

As the court reasoned, "even assuming the Plaintiffs' allegations to be true, the insurance policies they received were not 'illusory.'  To the contrary, if the Plaintiffs had been entitled to any benefits under the policies, the Defendant would have been legally obligated to provide them."  *Williams*, 2014 WL 4386463, at *2.

Finally, in *Campbell v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 14-0892(RC), 2015 WL 5449791,[9] the court dismissed certain of the plaintiff's claims for lack of standing.  *See id*. at *7-9.  First, the court rejected the plaintiff's claim that her policy was void *ab initio* because it violated Washington, D.C.'s insurance laws in light of D.C. Code § 31-4712(d)(2), which mandates that a "policy delivered or issued for delivery to any person in the District in violation of this section ***shall be held valid*** … ."  *Id*. at *12 n.18 (emphasis added).  As the court explained, "to the extent [plaintiff] asserts injury premised on payments for a policy that was invalid and unenforceable due to violations of DC insurance laws, the argument clearly fails as a matter of law."  *Id*. at *9.

---

[9] (J.A. 387-429.)

The court also found that because the plaintiff never submitted a claim or had a claim denied, her alleged injuries were speculative and hypothetical, thereby defeating her claim of standing:

> Significantly, [plaintiff] never submitted a claim for coverage to Defendants or had a claim denied, and her complaint does not identify a single instance in which any insured had his or her claim denied … Such conjecture cannot replace the type of factual allegations necessary to transform a speculative chain of possibilities into a plausible allegation of concrete, actual injury in fact.

*Id.* at *7-8 (citations omitted).

Here, the District Court correctly held, as did these other district courts in addressing motions to dismiss copycat suits by the same lead counsel, that if Plaintiffs had made a valid claim under the Policies (which they have not), North Carolina law would have required Virginia Surety and National Union to pay them. (J.A. 874.)  Thus, Plaintiffs' allegations of harm are entirely speculative, legally baseless, and do not satisfy Article III.  Plaintiffs' claims, therefore, fail as a matter of law and dismissal was warranted.

### D. Plaintiffs' Allegations That Defendants Violated Their Alleged Statutory Rights Are Insufficient To Confer Standing.

In response to their lack of any cognizable injury, Plaintiffs propose a fundamental revision of the law regarding Article III injury-in-fact.  First, Plaintiffs argue that that they have standing to challenge the violation of a statute even if they suffered no injury beyond the alleged statutory violation.  *See* Opening Brief

at 21-25.  That is not the law.  To begin with, a plaintiff who has not suffered a concrete and particularized injury lacks standing to bring a federal lawsuit to enforce state law.  The jurisdiction of federal courts under Article III is limited to cases and controversies, and absent a concrete injury personal to the plaintiff, such a plaintiff cannot seek generally to enforce the law.  *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "generalized grievance" does not confer standing).

Furthermore, North Carolina has not granted private parties a cause of action to enforce the insurance statutes upon which Plaintiffs' claims rely.  *See* N.C. Gen. Stat. §§ 58-51-75, 58-51-95.  Instead, the statutes provide for enforcement only through North Carolina's Insurance Commissioner.  *See id*.  As the U.S. Supreme Court has explained, "congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules."  *Warth*, 422 U.S. at 501.  However, the statute must confer a private right of action in the first instance.  *See id*.  If it does not, then a plaintiff lacks standing.  *See id*.

For this reason, the cases Plaintiffs cite on pages 21-24 of their Opening Brief are inapposite.  In those cases, the underlying statute conferred a private right of action.  *See, e.g., E.M. v. N.Y. City Dep't of Educ*., 758 F.3d 442, 451 (2d Cir. 2014) (noting that the statute at issue expressly provided for judicial review); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375-76 (1982) (claims brought under the Fair Housing Act, which confers a private right of action); *Hammer v.*

24

*Sam's East, Inc*., 754 F.3d 492, 500 (8th Cir. 2014) (claims brought under the Fair and Accurate Credit Transactions Act, which confers a private right of action); *Alston v. Countrywide Fin. Corp*., 585 F.3d 753, 761 (3d Cir. 2009) and *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009) (claims brought under the Real Estate Settlement Procedures Act, which confers a private right of action); *United Transp. Union Local Unions 385 & 77 v. Metro-North Commuter R.R. Co*., No. 94 Civ. 2979 (RWS), 1995 WL 634906, at *3 (S.D.N.Y. Oct. 30, 1995) (Federal Employers' Labor Act confers a private right of action).[10]   That is not the case here, and, accordingly, Plaintiffs cannot argue that they have standing based upon Defendants' alleged violations of N.C. Gen. Stat. §§ 58-51-75(a) and 58-51-95(f).

Plaintiffs' argument that economic damages are not required for purposes of Article III does not change the result.  *See* Opening Brief at 21-25.  Defendants have never argued otherwise.  The problem here, of course, is that while Article III does not require economic damages, it does require "an invasion of a ***legally protected interest*** which is … ***concrete and particularized***"[11]—which Plaintiffs do

---

[10] In one case, *Long Term Care Partners, LLC v. United States*, 516 F.3d 225 (4th Cir. 2008), the court declined to decide the standing issue, and instead found that judicial review was improper because there was no "final agency action" under the Administrative Procedure Act.  *Sun Life Assurance Co. of Canada v. Moran*, Nos. CV-08-0629-PHX-GMS, CV-08-0632-PHX-GMS, 2009 WL 2450443 (D. Ariz. Aug. 11, 2009), and *United States v. Gambler's Supply, Inc*., 925 F. Supp. 658 (D.S.D. 1996), also have no application here, because the underlying contracts violated express provisions of law and no statute similar to § 58-50-15(b) applied.

[11] *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (emphasis added).

25

not allege here.  Plaintiffs' "economic damages" argument is a red herring, and the Court should reject it.

### E.    Pleading A Theory That Is Foreclosed By Statute Is Insufficient To Confer Standing.

Next, Plaintiffs argue that merely pleading a theory of injury that is directly at odds with the law is sufficient to confer standing—*i.e.*, asserting a construction of the statutory text that ignores its plain language is all Plaintiffs must do to satisfy their burden to plead standing.  *See* Opening Brief at 25-28.  Plaintiffs are wrong.

First, as noted above, Plaintiffs fail to allege an injury-in-fact—whether the District Court is right about North Carolina law or not.

Moreover, a district court certainly is authorized to consider what rights a party has under state law to determine whether the legal conclusions underlying a claim of injury are correct.  A district court is not required to accept erroneous legal conclusions at any stage, including on a motion to dismiss (whether under Rule 12(b)(1) or 12(b)(6)).  *See, e.g., Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005) (when reviewing a motion to dismiss for lack of standing, the court need not accept the plaintiffs' legal conclusions as true); *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (in reviewing a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the court is not required to "assume the truth of legal conclusions merely because they are cast in

the form of factual allegations"); *DirecTV, Inc. v. Tolson*, 498 F. Supp. 2d 784, 786 (E.D.N.C. 2007) ("neither rule requires the court to accept plaintiffs' legal conclusions."). Thus, the District Court was entitled to reject Plaintiffs' repeated allegations that their Policies were "unlawful," "illegal," and "void."[12]

## F.    The Court Should Reject Plaintiffs' Invitation To Disregard The Plain Language Of N.C. Gen. Stat. § 58-50-15(b).

Plaintiffs urge this Court to disregard § 58-50-15(b)'s plain and unambiguous language and make new law limiting the statute's applicability. Specifically, Plaintiffs claim that under North Carolina common law, an insurance policy that "violate[s] a specific North Carolina insurance statute [is] void against the public policy of North Carolina" and the Court should read § 58-50-15(b) in the same manner. Opening Brief at 31-32. Plaintiffs also argue that North Carolina common law compels the conclusions that (1) insurers "may not use § 58-50-15(b) as a sword" and (2) "if insurers can ever invoke N.C. Gen. Stat. § 58-50-15(b) for their benefit, they may only do so where the statutory violations can be cured." *Id*. at 36-50. Plaintiffs' arguments lack merit for several reasons.

First, it is axiomatic that the putative common law "is irrelevant in the face of explicit statutory language" to the contrary. *Vogel v. Reed Supply Co.*, 177 S.E.2d 273, 281 (N.C. 1970) (disregarding the common law definition of "general contractor" in light of explicit statutory language defining the term); *see also State*

---

[12] *See, e.g*., FAC, ¶¶ 52, 102, 108, 109, 117, 120 (J.A. 98, 113, 115-16, 117, 119).

*v. Moore*, 395 S.E.2d 124, 127 (N.C. 1990) (a court "need not address" the common law when there is specific statutory language on point). Here, § 58-50-15(b) is plain and unambiguous, and provides that Plaintiffs' Policies "***shall be held valid***," regardless of any alleged regulatory violations. N.C. Gen. Stat. § 58-50-15(b) (emphasis added).[13]

Second, a court "cannot read into a statute a requirement that is not there." *Plemmons*, 302 S.E.2d at 907. Because § 58-50-15(b) does not say that an allegedly offending policy "'shall be valid but only if the insurer seeks to avoid it'" or that an insurer can invoke it "'only where the statutory violation can be cured,'" Plaintiffs' argument plainly fails. *See In re Crawford*, 517 S.E.2d 161, 164 (N.C. App. 1999) (the legislature's failure to include language in a statute is "clear evidence of its intent that no such [language was intended]"); *United States v. Graham*, 608 F.3d 164, 176 (4th Cir. 2010) ("In the face of the unambiguous words of the statute, we cannot construe [the statute] to add language that Congress omitted."). Indeed, as the U.S. Supreme Court has explained, proper statutory construction "begins with the language of the statute," and where, as here, "the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

---

[13] Moreover, a court will not refer to the common law when doing so would render the relevant statutory language superfluous, *see Plemmons v. City of Gastonia*, 302 S.E.2d 905, 907 (N.C. App. 1983), which is precisely what Plaintiffs' proffered interpretation of the common law would do.

Third, Plaintiffs misstate the case law interpreting § 58-50-15(b).  No court has "held that the North Carolina legislature intended the statute only to protect insureds and beneficiaries and deter violations of the law by insurers, not reward insurance company violators."  Opening Brief at 40.  Indeed, as Plaintiffs acknowledge, prior to this case, the courts had interpreted the statute only twice (actually, its predecessor): *Stainback v. Investor's Consol. Ins. Co.*, 306 S.E.2d 532 (N.C. App. 1983), and *The Harrison Agency, Inc. v. Pacific Mut. Life Ins. Co.*, 703 F. Supp. 441 (W.D.N.C. 1989).[14]

In *Stainback*, the North Carolina Court of Appeals applied § 58-50-15(b)'s predecessor, N.C. Gen. Stat. § 58-258(b)[15] in holding that an employer's group hospitalization insurance policy that violated a North Carolina insurance regulation was not void *ab initio*.  306 S.E.2d at 533.  As it reasoned, "[v]iolation of the [subject requirements] does not automatically void the policy.  Pursuant to Gen. Stat. § 58–258(b), a policy issued in violation of the statute 'shall be held valid.'" *Id*. at 534.

In *The Harrison Agency*, the Western District of North Carolina refused to apply § 58-258(b) in connection with an insurance broker's claim for unpaid

---

[14] Plaintiffs inexplicably failed to address, distinguish, or even cite either case in their opposition to Virginia Surety's motion to dismiss.  (*See* J.A. 819-40.)

[15] Similarly to § 58-50-15(b), § 58-258(b) provided "[a] policy delivered or issued for delivery to any person in this State in violation of this Subchapter shall be held valid but shall be construed as provided in this Subchapter."

commissions earned on sales of allegedly illegal insurance policies. 703 F. Supp. at 450. The court *did not* "hold that § 58-50-15(b) exists only to protect innocent insureds." Opening Brief at 43. Rather, the court reasoned that § 58-50-15(b)'s predecessor statute "refers to enforcing the rights between the insured, the insurer, and the beneficiary," thus, its language "indicates that the North Carolina General Assembly was not concerned with protecting the pecuniary interests of brokers, agents, or promoters." 703 F. Supp. at 450. *The Harrison Agency* has no application here, because Plaintiffs' claims plainly implicate the rights between "the insured, the insurer, and the beneficiary," bringing this case squarely within § 58-50-15(b).

Finally, the remaining North Carolina decisions on which Plaintiffs rely are inapposite. First, as explained at pages 23-25, *Richardson v. Bank of America, N.A.*, 643 S.E.2d 410, dealt with Article 57 of the Insurance Code, a law not at issue here, and no provision similar to § 58-50-15(b) applied.

Second, as Plaintiffs correctly note, *Latta v. Farmers County Mutual Fire Ins. Co.*, 313 S.E.2d 214 (N.C. App. 1984), stands for the proposition that "an insurer must return premiums where, without fault or fraud by the insured, no risk to the insurer ever attaches under the policy." Opening Brief at 32 (quoting *Latta*, 313 S.E.2d at 496). However, *Latta* does not apply here because risk *did* attach

30

under the Policies, which have always been valid and enforceable under § 58-50-15(b).

Finally, the result in *Robinson v. Security Life & Annuity Co*., 79 S.E. 681, turned on the fact that the insurer refused to perform its obligations under the policy, not the dicta Plaintiffs cite on page 34 of their Opening Brief.   The *Robinson* court expressly held that its discussion of principles regarding illegal contracts was "***not necessary***."   *Id*. at 684 (emphasis added). "The contract is not immoral, and, if illegal, it is so by reason of the [applicable statute], and the action is not to enforce the contract, but to recover money received by the defendant under it, and ***after a refusal to perform***."   *Id*. (emphasis added).  Here, of course, Defendants have not refused to perform under the Policies (aptly demonstrated by Plaintiffs' concession that they have never suffered a covered loss, made a claim for benefits under the policy, or had any such claim denied), nor are Defendants seeking to enforce any obligation against Plaintiffs—making *Robinson* inapplicable.

## G.    The Out-Of-State Decisions Cited By Plaintiffs Do Not Support Their Arguments.

Plaintiffs argue that "statutes similar to § 58-50-15(b) have been construed to only protect insureds and not insurers."  Opening Brief at 44.  Not one of the cases Plaintiffs cite at pages 44-46 of their Opening Brief so holds.  In fact, cases from other jurisdictions support the opposite conclusion.

31

In *Hill v. State Farm Mutual Ins. Co.*, 375 S.E.2d 727 (Va. 1999), the court considered whether Va. Code Ann. § 38.2-318(A)[16] invalidates coverage that is broader than the coverage required by Virginia's insurance laws. *See id.* at 729 (internal quotation marks omitted). The court answered the question in the negative, finding that "[t]here is no prohibition against an insurer offering broader coverage than the minimum prescribed by law." *Id.* The court explained:

> [Va. Code Ann. § 38.2-318(A)] take[s] effect only where an insurer seeks, by policy language, to narrow, avoid, vary or restrict the coverage the legislature has required. That is so because those superseding provisions are triggered expressly when policy terms are "inconsistent" with the terms prescribed by law. When the policy affords broader coverage than the law requires, no inconsistency exists; the policy provides all the coverage the statute demands, and more.

*Id.* Plaintiffs take the first sentence of this quote out of context in suggesting the court held that the statute applies only in limited circumstances where the insurer seeks to avoid the minimum coverage required by the law. The court's holding, however, makes clear that Va. Code Ann. § 38.2-318(A), like N.C. Gen. Stat. § 58-50-15(b), applies **whenever** the insurance policy at issue "is not in compliance with" applicable insurance regulations.

*Excelsior Insurance Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938 (Fla. 1979), also does not support Plaintiffs' argument. There, the insured

---

[16] That statute provides, in pertinent part: "Any insurance policy or form containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title."

argued that an exclusion in the subject policy effectively made the coverage illusory and, therefore, that the policy was void. *Id.* at 941. Alternatively, the insured argued that the policy's exclusionary language violated Florida's insurance laws and, therefore, that Fla. Stat. § 627.418(1)[17] required the court to strike it. *Id.*

The Florida Supreme Court rejected both arguments. It refused to find the policy "void *ab initio*," holding that such finding would "affront[] the rule which prefers that contracts be construed as valid." *Id.* at 941-42 (citations omitted).The court also found that the subject exclusionary language did not violate Florida's insurance laws, so § 627.418(1) did not apply. *See id.* at 942. *Excelsior* thus cannot stand for the proposition that "statutes similar to § 58-50-15(b) have been construed to protect only insureds and not insurers," as the court **refused** to apply the statute **to protect the insured**.

Finally, N.Y. Ins. Code, § 3103(a)[18] does not help Plaintiffs, and the cases Plaintiffs cite do not support the narrow interpretation Plaintiffs attempt to ascribe

---

[17] That statute provides: "Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid … , but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code."

[18] "Except as otherwise specifically provided in this chapter, any policy of insurance or contract of annuity delivered or issued for delivery in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer issuing the same, but in all respects in which its provisions are in

33

to it. *Posner v. U.S. Fidelity & Guaranty Co.*, 226 N.Y.S.2d 1011 (N.Y. Sup. Ct. 1962 and *Helfaer v. John Hancock Mut. Life Ins. Co.*, 274 N.Y.S.2d 494 (N.Y. Sup. Ct. 1966), support the unremarkable proposition that an insurer cannot avoid liability under an insurance policy by arguing that the policy it issued is illegal—which, of course, is not a position any Defendant has taken here. Neither case stands for the proposition that the court must ignore the plain language of N.Y. Ins. Code, § 3103(a) when the **insured** asserts that the policy is void.

Notably, courts from other jurisdictions have rejected the arguments Plaintiffs make here—*i.e.*, that statutes similar to § 58-50-15(b) may not be used "as a sword" and insurers may only invoke those statutes "where the statutory violations can be cured." Opening Brief at 36-50. For example, Florida's courts have allowed **insurers** to use Fla. Stat. § 627.418(1) to enforce policies containing provisions that allegedly violated Florida's insurance laws, or, as Plaintiffs term it, as a "sword." For example, in *Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265 (M.D. Fla. 2012), the plaintiffs (like Plaintiffs here) alleged that their insurance policies violated numerous provisions of Florida's insurance laws, making them unauthorized and void. *Id.* at 1268. The insurers moved to dismiss, and the court granted the motions with prejudice. As it explained, "a [violative] policy typically

---

violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions."

34

remains valid under Section 627.418." *Id*. at 1269.[19]  Of course, the same is true here, because N.C. Gen. Stat. § 58-50-15(b) renders Plaintiffs' policies valid and enforceable despite any alleged violations of the Insurance Code.  *See also El-Ad Enclave at Miramar Condominium Ass'n, Inc., v. Mt. Hawley Ins. Co.*, 752 F. Supp. 2d 1282, 1292 (S.D. Fla. 2010) (rejecting the insured's argument that the subject deductible provision was void and unenforceable despite its alleged noncompliance with Florida law because § 627.18 rendered the provision "valid").

Similarly, in the nearly identical *Williams v. National Union Fire Insurance Co. of Pittsburgh, P.A*., the plaintiffs argued, just as Plaintiffs argue here, that O.C.G.A. § 33-34-12(b) "only calls for the enforcement of an insurance policy when a condition or provision can be altered to make the policy conform to Georgia law."  2014 WL 4386463, at *2 (internal quotation omitted).  The court disagreed, finding that the plaintiffs' reading of the statute was "inconsistent with how Georgia courts have interpreted [it]."  *Id*.  As demonstrated by *Stainback* and *The Harrison Agency*, the same is true here.

---

[19] The court also found problematic the plaintiffs' decision to exclude from their proposed class those who had submitted claims, reasoning that "[i]f the policy is worthless because the insurers refuse to pay a claim, [plaintiffs] forfeit that point because neither submitted a claim.  If the policy is worthless because the coverage is duplicative, no one ever submits a claim, and the need to exclude each claimant [from the proposed class] betrays the policy's worth.  Either way, [plaintiffs'] allegation that the policy is worthless collapses."  *Id*. at 1273-74.

35

In short, as the foregoing demonstrates, Plaintiffs' argument that the Court should add conditions to the plain and unambiguous language of N.C. Gen. Stat. § 58-50-15(b) fails. Plaintiffs' Policies are valid and enforceable as a matter of law, and the District Court's holding was correct.

### H.    Plaintiffs' "New" Injuries Do Not Establish Standing.

In a final effort to revive their claims, Plaintiffs' Opening Brief alleges several new "injuries," but none of those new theories has merit.[20]

Plaintiffs first claim that even if the Policies are not void, they are voidable at Plaintiffs' option and that Plaintiffs can exercise that option to cure their lack of standing. Opening Brief at 50-52. But the First Amended Complaint does not seek rescission to avoid the prospective obligation to pay program fees, because that would require Plaintiffs to allege the existence of an enforceable contract—not one that is illegal and void *ab initio*. *See, e.g., Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, Nos. 1:04CV00820, 1:04CV01079, 2006 WL 3848697, at *4

---

[20] Despite ample opportunity to do so, Plaintiffs never argued to the District Court that those alleged injuries saved their claims or gave them standing, (J.A. 819-40), thus, Plaintiffs cannot raise those alleged injuries for the first time here. *See Rowell v. City of Hickory*, 341 Fed. App'x 912, 917 (4th Cir. 2009) (an argument not presented below is waived). To the extent Plaintiffs attempt to argue that they allege those injuries in the First Amended Complaint, it is axiomatic that "[o]nly those questions which are squarely presented to a court may properly be addressed" and that a district court is not permitted to construct a plaintiff's legal arguments for him. *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) (citation omitted). Accordingly, Plaintiffs have not preserved these issues for appeal.

(M.D.N.C. Dec. 29, 2006) (holding that a voidable contract "is valid until rescinded") (cited at page 50 of Plaintiffs' Opening Brief). Accordingly, Plaintiffs' own allegations defeat their new "voidable" argument as a matter of law.[21]

Moreover, Plaintiffs readily acknowledge that no North Carolina case supports their argument that "insureds are entitled, as part of their rescission remedy, to recover the entire amount paid for the Policies." Opening Brief at 51.[22] Plaintiffs rely solely on a New York case, *Dornberger v. Metro. Life Ins. Co*., 961 F. Supp. 506 (S.D.N.Y. 1997), but their reading of that case is flawed. New York courts repeatedly have rejected plaintiffs' contentions that any statutory violation *per se* entitles a contracting party to rescission. *See Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.,* No. 06 Civ. 4624, 2008 WL 1910503, at *6

---

[21] Moreover, even if Plaintiffs had alleged the existence of a valid contract, or pled rescission in the alternative, the claim would still fail, because the only "harm" Plaintiffs identify is the payment of premiums for allegedly void coverage. Thus if, Plaintiffs now claim, for the purpose of establishing standing, that the Policies are enforceable, Plaintiffs have pled the only alleged harm out of the First Amended Complaint.

[22] Plaintiffs cite two North Carolina cases discussing rescission in general, but neither helps them here. First, in *Van Gilder v. Bullen*, 74 S.E. 1059 (N.C. 1912), the North Carolina Supreme Court held that the defendant "had no right to a rescission of the contract, as there was a delay of about two years after the discovery of the alleged fraud before [the] action was commenced." *Id*. at 1061. Likewise, in *Nakell*, because the plaintiff continued to accept the benefits of the parties' contract "even after it was aware of the alleged unlawful conduct" underlying its rescission claim, the court found that it was not entitled to rescission. *Id*. at *5. Here, as demonstrated below, Plaintiffs knew or had reason to know of all the facts giving rise their claims years ago, yet sat idly by, thereby foreclosing any attempt to rescind their Policies.

(S.D.N.Y. Apr. 30, 2008) (dismissing an insured's claim "seeking rescission because the Policies are unlawful group insurance policies" because violations of group insurance statutes are *malum prohibitum* violations that do not give rise to a claim for rescission); *Pensions Plus, Inc. v. Gallagher Benefit Servs*., *Inc*., No. 08 Civ. 11341, 2011 WL 1345382, at *4 (S.D.N.Y. Mar. 29, 2011) (applying *Quanta* and holding that violation of the insurance code does not entitle the non-violating party to retroactively undo the agreement).  Indeed, New York's courts generally reject rescission claims based on violations of mere "*malum prohibitum*" regulatory provisions.  *See Lloyd Capital Corp. v. Pat Henchar, Inc*., 80 N.Y.2d 124, 128 (N.Y. 1992).

*Quanta Specialty Lines* is particularly instructive.  There, like the case at hand, an insured—relying "heavily upon *Dornberger*"—sought to retroactively rescind its insurance coverage based on allegations that the policies were "unlawful group insurance policies" and otherwise violated various provisions of the New York insurance code.  2008 WL 1910503, at *4.  The court dismissed Quanta's claim, explaining that "[v]oiding the contract at issue here would not be commensurate with Quanta's alleged Insurance Law violation" and that even "[a]ssuming, arguendo, that the Policies constitute unlawful group policies, the [Insurance] Superintendent is tasked with redressing such a problem." *Id*. at *6.

38

This case is no different, and Plaintiffs are not entitled to retroactively rescind their coverage.

Nor is there any merit to Plaintiffs' contention that they have satisfied their burden to plead standing with allegations that the Policies were "virtually worthless" because "the terms of coverage were so restrictive and contradictory and because [Defendants] had a systematic policy of denying all Disability Coverage claims regardless of merit."[23]  Plaintiffs have never been disabled, have never made a claim for benefits under the Program, and have never been denied benefits under the Program.  Moreover, their proposed class expressly excludes anyone with "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of [the] disability insurance policies." FAC, ¶ 159(e) (J.A. 127).  It follows that Plaintiffs' allegations of predetermined denials are grounded on mere speculation regarding what would have happened *if* they had become disabled, and *if* they had sought benefits.[24]  As explained above,

---

[23] Opening Brief at 53.

[24] For this reason, a host of courts have concluded that insureds cannot challenge the coverage terms of their policy unless and until they suffer a covered injury. *See, e.g., Maio v. Aetna, Inc*., 221 F.3d 472, 480 (3d Cir. 2000) (dismissing a challenge to the scope of insurance because insurance "cannot be 'worthless' unless something plaintiffs were promised was denied to them"); *Impress Commc'ns v. Unumprovident Corp*., 335 F. Supp. 2d 1053, 1061 (C.D. Cal. 2003) (plaintiffs lacked standing to challenge the scope of their coverage where they "never made a claim for benefits that [the] [d]efendants … failed to honor"); *Doe v. Blue Cross Blue Shield of Maryland, Inc*., 173 F. Supp. 2d 398, 399, 403 (D. Md. 2001) (dismissing for lack of Article III injury where plaintiffs complained

however, it is black-letter law that a plaintiff does not have standing to pursue such theoretical, speculative, and hypothetical injuries. *See, e.g., Lujan*, 504 U.S. at 560-61.

As the District Court correctly explained:

> In sum, plaintiffs lack Article III standing to prosecute their claims against underwriter defendant Virginia Surety. Plaintiffs have suffered neither a concrete nor an imminent injury. The insurance program, consisting of both the Disability Benefit and Health Benefit, is valid and enforceable under North Carolina law. Had plaintiffs made a claim, the underwriter would have been obligated to process it in accordance with the terms thereof. Plaintiffs have never made a claim, and there is no allegation in the amended complaint that plaintiffs currently have any identifiable claim for disability benefits. Based on the foregoing, plaintiffs cannot show an injury-in-fact accruing from the actions of defendant Virginia Surety, and their claims against this defendant, and those associated therewith, must be dismissed for lack of standing. So goes then claims also against defendant HealthExtras and defendant Alliant premised on the policy underwritten by defendant Virginia Surety.

(J.A. 874) (citations omitted); *see also Waiserman*, No. 2:14-CV-00667, at *4 (rejecting as "supposition" and "pure speculation" the allegation that "because the [Program] defendants had no intention of paying out claims, they misappropriated plaintiff's money," and holding that the alleged harm did not constitute injury-in-

---

about "covert application of overly restrictive coverage criteria" that had never been applied to them); *Campion v. Old Republic Home Prot. Co., Inc*., No. 09-cv-748, 2010 WL 2724278, at *3 (S.D. Cal. July 7, 2010) (holding policyholders who did not file claims "d[id] not have an actual injury"); *Bank of Am. v. Martin*, No. 1:12-cv-544, 2013 WL 5128840 (M.D. pa. Sept. 12, 2013 ("[u]nless and until the [plaintiff] can show that he suffered a covered loss contemplated by the … insurance contract, a claim for breach of that contract is speculative); *Weaver v. Aetna Life Ins. Co*., No. 3:08-cv-00037, 2008 WL 4833035, at *2-3 (D. Nev. Nov. 4, 2008) (dismissing a claim challenging the benefits provided under an insurance policy because plaintiffs had not filed a claim and thus lacked standing).

40

fact); *Campbell*, 2015 WL 5449791, at *7-8 ("Although [plaintiff] now argues that if she had submitted a disability claim that it would have been denied," "[s]uch conjecture cannot replace the type of factual allegations necessary to transform a speculative chain of possibilities into a plausible allegation of concrete, actual injury in fact") (citations omitted).

Plaintiffs' claim that "they were charged more than they were represented they would be charged" also fails. Opening Brief at 54. The First Amended Complaint does not assert a misrepresentation claim or seek damages for any purported misrepresentations relating to the amount Plaintiffs would be charged for the Program, and it is axiomatic that a plaintiff cannot amend her allegations on appeal. *See Southern Walk at Broadlands Homeowners Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013) (rejecting plaintiff's attempt to amend its standing allegations on appeal, and explaining that "it is well-established that parties cannot amend their complaints through briefing or oral advocacy").

Further, although Plaintiffs' own allegations disclose that their program fees increased in 2005 and 2009, and those increases plainly were reflected on Plaintiffs' credit card statements,[25] Plaintiffs never objected to those increases and continued to pay them for years without question. *See generally*, FAC (J.A. 84-

---

[25] FAC, ¶¶ 41-46, 52, 68-69, 76 (J.A. 96-98, 101-02, 103).

158).  Accordingly, Plaintiffs are precluded from complaining about the allegedly unauthorized fee increases.  Indeed, in the *Watson* copycat litigation, the court recently explained why this claim fails:

> [P]laintiffs implicitly gave defendants their permission to collect the increased insurance premiums by failing to object when the premiums were increased in 2005 and 2009, and by continuing to pay the increased premiums for years without questioning them.  Plaintiffs were informed of the increased insurance premiums on their credit card statements or bank statements, and they did not question these increases in either 2005 or 2009 when they occurred.  Instead, plaintiffs continued to pay the premiums, thereby ratifying the increases.  Thus, plaintiffs are estopped from bringing [claims] against the defendants.

*Watson*, 2015 WL 5714635, at *9.

In addition, as explained below, Plaintiffs' "program fee increase" claims are time-barred.

Finally, Plaintiffs cannot satisfy their burden to plead standing by alleging that Defendants "failed to disclose that 80% of the 'premiums' paid by [Plaintiffs] did not go to pay for insurance coverage, but rather went to marketing expenses and profit,"[26] because Plaintiffs do not identify any authority, whether by statute or common law, that requires disclosure of how membership fees will be allocated. Indeed, courts have rejected similar efforts to use unfair and deceptive trade practices laws to mandate disclosures about the allocation of amounts charged for insurance.  *See, e.g., Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1129,

---

[26] Opening Brief at 54.

1132 (2010) (finding "no common law authority" or "principled basis" for imposing a duty on insurers to disclose "information pertaining to the price that the insurer is willing to accept for coverage"); *Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co*., 62 Cal. App. 4th 1166, 1173-74 (1998) (rejecting California Unfair Competition Law claims predicated on purported duty to disclose how premiums were calculated).

For all the foregoing reasons, the District Court properly found that the First Amended Complaint fails to allege an injury-in-fact and that Plaintiffs accordingly lack standing under Article III.  Dismissal under Rule 12(b)(1) was proper and should be affirmed.[27]

---

[27] Plaintiffs did not make any of the arguments on pages 16-59 of their Opening Brief to the District Court.  (*See* J.A. 819-40.)  Rather, Plaintiffs attempted to avoid the plain language of N.C. Gen. Stat. § 58-50-15(b) by arguing that North Carolina law does not apply to their claims because the trust to which the Policies were issued was outside North Carolina.  (*See id*. 826-30, 872-73.)  The District Court rejected that argument, concluding that the First Amended Complaint "does not contain allegations that speak to the trust's location" and that Plaintiffs could not amend their allegations by their brief in opposition to the motion to dismiss.  (*Id*. at 872-73.)  The District Court also found that Plaintiffs' new theory was inconsistent with the First Amended Complaint, from which it "may be inferred that the trust is located in [North Carolina],where [P]laintiffs repeatedly allege defendants violated North Carolina law."  (*Id*. at 873).  Plaintiffs have abandoned that baseless theory on appeal in favor of the new arguments they advance on pages 18-58 of their Opening Brief.  However, it is well-established that new theories and arguments ordinarily will not be accepted for the first time on appeal.  *See United States v. Edwards*, 666 F.3d 877, 887 (4th Cir. 2011); *Karpel v. Inova Health Sys. Servs*., 134 F.3d 1222, 1227 (4th Cir. 1998); *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).  Here, because Plaintiffs did not any of raise these theories to the District Court, they have waived them for purposes of this appeal and the Court

43

### III. Plaintiffs' "Unauthorized Premium Increase" Theory Fails As A Matter Of Law.

The District Court properly dismissed Plaintiffs' "unauthorized premium increase" claim.

First, as explained above, Plaintiffs are precluded from complaining about the allegedly unauthorized fee increases because they never objected to them and continued to pay them for years without question. *See Watson*, 2015 WL 5714635, at *9. Moreover, there is no private right of action to sue for alleged violations of N.C. Gen. Stat. § 58-51-95, thus, that allegation cannot form the basis of Plaintiffs' claims as a matter of law.

Second, § 58-51-95(f) only regulates insurance premiums charged by insurers. Because the program fee is not an insurance premium and the fee increases were not levied by an insurer, § 58-51-95(f) does not apply. Thus, the District Court correctly held that the First Amended Complaint does not allege that the *premiums* Plaintiffs were charged were increased without the regulatory approval required under § 58-51-95. (J.A. 872 n.17.)

---

should reject them. *See Rowell*, 341 Fed. App'x at 917 ("There are many problems with [appellant's new] argument. The most important is that it was not presented below, and as a legal matter, the argument is therefore waived. … [plaintiff] cannot shift gears while his case is on appeal to take advantage of a new theory of liability that he did not assert below.") (citations omitted). Out of an abundance of caution, however, Defendants address Plaintiffs' arguments here.

That the First Amended Complaint erroneously calls the program fee a "premium"[28] is irrelevant. As the North Carolina Supreme Court previously explained, "[t]he word 'premium,' when used in connection with insurance, has a well-defined meaning. It is 'the consideration paid … *for contract of insurance*.'" *Am. Equitable Assurance Co. v. Gold*, 106 S.E.2d 875, 877 (N.C. 1959) (emphasis added). As Plaintiffs acknowledge, the "program fees [] included" *but were not limited to* "the premium for the Accidental Permanent and Total Disability insurance . . . and . . . the Emergency Accident and Sickness" coverage. FAC ¶ 41 (J.A. 96). Thus, while a portion of the program fee may have been used to pay "premiums" owed to National Union and Virginia Surety, Plaintiffs cannot— consistent with North Carolina law—claim that their entire program fee constitutes an insurance premium. Accordingly, because only the portion of the program fee that was eventually remitted to National Union and Virginia Surety constitutes an insurance premium, and Plaintiffs do not allege any facts demonstrating that the amounts actually paid to National Union or Virginia Surety were increased, the court correctly dismissed Plaintiffs' claims under § 58-51-95.

Nor can Plaintiffs claim that HealthExtras violated § 58-51-95(f) by increasing the *program fee*. By its express language, § 58-51-95(f) applies only to fees charged by "an insurer." N.C. Gen. Stat. § 58-51-95(f). Here, Plaintiffs allege

---

[28] *See, e.g.*, FAC ¶¶ 45, 46, 69 (J.A. 97, 101-02).

that neither Catamaran, HealthExtras, Inc., nor HealthExtras, LLC are "licensed or authorized by any State or Department of Insurance to conduct the business of insurance" and that Policies instead were underwritten by "various licensed insurance carriers" such as National Union and Virginia Surety.  FAC ¶¶ 85, 88(h)-(i), 89 (J.A. 108-09).  Thus, according to Plaintiffs' own allegations, HealthExtras is not an insurer and thus is not subject to the provisions of § 58-51-95(f).

Plaintiffs also cannot escape the plain language of § 58-51-95(f) by claiming that any program fee increase resulted in National Union and Virginia Surety receiving increased premiums.  The First Amended Complaint does not allege that the membership fee increases changed the amount of money that any insurer received.  To the contrary, it alleges that National Union and Virginia Surety were paid a fixed premium that was independent from the amount of the program fee. *See, e.g.*, FAC ¶ 100 (stating National union received $2.24/month) (J.A. 112).  Because the premium that HealthExtras paid National Union and Virginia Surety did not increase, neither National Union nor Virginia Surety had an obligation to make any filings under § 58-51-95(f).

## IV.    Because Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted, Dismissal Also Was Proper Under Rule 12(b)(6).

Although Plaintiffs ignore the issue in their Opening Brief and thus have waived any argument on it for purposes of this appeal, *see, e.g., Brown*, 785 F.3d at 923, dismissal also was proper under Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted. When the applicable law "does not reach" the alleged conduct, dismissal under Rule 12(b)(6) for failure to state a claim is proper. *Pitt County*, 553 F.3d at 313. Similarly, the absence of any cognizable harm to Plaintiffs is fatal to all their claims for relief. *See, e.g., Hospira Inc. v. Alphagary Corp.*, 671 S.E.2d 7, 12 (N.C. App. 2009) (a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.* requires the plaintiff to show, *inter alia*, that he was injured as a result of the defendant's conduct); *Watson Elec. Constr. Co. v. Summit Cos., LLC,* 587 S.E.2d 87, 92 (N.C. App. 2003) (unjust enrichment claim requires a showing that the defendant was unjustly enriched at the plaintiff's expense); *James B. Taylor Family Ltd. P'ship v. Bank of Granite*, 762 S.E.2d 531, at *8 (N.C. App. 2014) (Table) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.").

Here, as demonstrated above the applicable law simply "does not reach" Defendants' alleged conduct and Plaintiffs were not injured. First, the plain, unambiguous language of N.C. Gen. Stat. §§ 58-50-15(b) forecloses Plaintiffs' "void *ab initio*" theory—which is the linchpin of all their claims. Second, Plaintiffs have never been disabled, have never made claims for benefits under the Program, and have never been denied benefits under the Program. Third,

47

Plaintiffs' "unauthorized fee increase" claims fail under the plain and unambiguous language of § 58-51-95(f), which does not give Plaintiffs the right to sue for alleged violations, and, as explained above, Plaintiffs have not alleged (and cannot allege) a violation of § 58-51-95(f). Finally, by continuing to pay the allegedly unauthorized fees for years without objections, Plaintiffs gave their implied consent and are estopped from contesting them now.

In sum, Plaintiffs' claims are untenable as a matter of law and dismissal under Rule 12(b)(6) was proper, even assuming Plaintiffs could establish an injury that crosses the threshold for Article III standing. *See Pitt County*, 553 F.3d at 313-15 (holding that dismissal was proper under Rule 12(b)(6) because under the plain language of the governing North Carolina statute, it did not apply to the defendants as a matter of law and the complaint thus failed to state a claim upon which relief could be granted). Accordingly, the Court can and should affirm the District Court's Order on this ground as well. *See id*. at 311, 313-15 (finding that the district court erred in dismissing the plaintiff's claims on jurisdictional grounds but nonetheless affirming as a matter of law under Rule 12(b)(6) because the appellate court is "not limited to evaluation of the grounds offered by the district court to support its decision, but … may affirm on any grounds apparent from the record") (quotations and citation omitted).

48

V.    **Plaintiffs' Claims Are Time-Barred.**

Plaintiffs' claims are time-barred and the First Amended Complaint fails to allege a basis for applying the doctrine of equitable estoppel.  The District Court never reached those issues because it found that Plaintiffs lacked standing under Article III.  (J.A. 856-78.)  Plaintiffs also failed to address those issues in their Opening Brief.  *See generally*, Opening Brief.  Nonetheless, because the statute of limitations provides an independent ground for dismissal, and because the Court can "affirm on any grounds apparent from the record,"[29] the District Court's order can be affirmed on this basis as well.

In its September 8, 2014 opinion allowing Petruzzo's motion to amend his complaint in part, the District Court held that because Petruzzo first paid for his policy in 2000,[30] and the Bush Plaintiffs first paid for theirs in 1999,[31] their claims are time-barred, unless Plaintiffs can demonstrate a basis to revive them.[32]  (J.A. 65.)  There is no such basis here.

---

[29] *Pitt County*, 553 F.3d at 311.

[30] FAC, ¶ 37 (J.A. 95).

[31] FAC, ¶ 65 (J.A. 101).

[32] Plaintiffs' claims for unjust enrichment, breach of the duty of good faith and fair dealing, and civil conspiracy are subject to a three-year statute of limitations, while their unfair and deceptive trade practices act claim under N.C. Gen. Stat. § 75-1.1 is subject to a four-year statute of limitations.  (J.A. 64-65.)  Plaintiffs did not sue Virginia Surety until September 2014—well more than 14 years after they obtained their Policies and more than five (Bush) and nine (Petruzzo) years after their allegedly illegal fee increases appeared on their credit card statements.  Thus,

Although Plaintiffs contend that the doctrine of equitable estoppel saves their time-barred claims, *see, e.g.*, FAC, ¶¶ 161(j), 174 (J.A. 129-30, 135),[33] Plaintiffs have alleged no facts that show Defendants induced Plaintiffs to delay filing suit. Under North Carolina law, the doctrine of equitable estoppel requires

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the [plaintiff], or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; and (3) knowledge, actual or constructive, of the real facts.

*Wilkerson v. Christian*, No. 1:06cv00871, 2008 WL 483445, at *7 (M.D.N.C. Feb. 19, 2008) (quotations and citation omitted). In addition, the party claiming estoppel has the burden of alleging "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Id*. Here, Plaintiffs apparently contend that Defendants may be equitably estopped from pleading the statutes of limitation on the following grounds: (1) their alleged "explicit representations of coverage, with

---

unless Plaintiffs have adequately alleged a basis to avoid the statute of limitations, their claims plainly are time-barred.

[33] (*See also* J.A. 65 ("However, plaintiffs argue for grounds on which to find that the general laws of accrual do not apply. They argue that the court should apply equitable estoppel to estop defendants from pleading the statute of limitations defense.").)

an implicit representation that the coverage would be valid"; (2) their alleged representation that Plaintiffs "were part of valid blanket group, while failing to provide both the policy forms and master policy, all of which prevented plaintiffs from recognizing the policies were void"; and (3) their alleged conduct designed "to avoid insurance regulation and to disguise the fact that the subject policies have no value to the actual persons who were and are paying the premiums." (J.A. 68 (internal quotation marks omitted).) But none of this conduct can form the basis for equitable estoppel.

It is well-established that under the doctrine of equitable estoppel, the defendant's conduct "must specifically induce a party to delay filing suit." *Trana Discovery, Inc. v. S. Research Inst.*, No. 5:13-CV-848-F, 2014 WL 5460611, at *8 (E.D.N.C. Oct. 27, 2014) (citation omitted). Moreover, the conduct forming the basis for the estoppel ***cannot be the same conduct that forms the basis for the claims***. *See Wilkerson*, 2008 WL 483445, at *7 ("the fraud consists in the inconsistent position subsequently taken, rather than in the original conduct."); *Trana Discovery, Inc.*, 2014 WL 5460611, at *8 (refusing to apply the doctrine because the conduct that formed the basis for the plaintiff's equitable estoppel claim was the same conduct that formed its causes of action).

Here, the First Amended Complaint does not allege any subsequent conduct by Defendants that prevented Plaintiffs from filing suit. Indeed, the First Amended

51

Complaint is completely silent on the issue. Moreover, all of the conduct on which Plaintiffs seek to base their equitable estoppel theory—alleged statements about the nature of their policies when, in reality, those policies allegedly were "illusory," "virtually worthless," and "void"—is the same conduct forming their claims. However, that conduct cannot form the basis for equitable estoppel under North Carolina law.

The First Amended Complaint reveals[34] that Plaintiffs did not sue Defendants until (1) twelve to fourteen years after they purchased their policies;[35] (2) seven to nine years after Petruzzo received the October 27, 2004 letter explicitly informing him the Policies were issued to a trust, and which contained the "extremely restrictive exclusions and contradictory terms which intentionally render[ed] the policy virtually worthless to purchasers;"[36] and (3) more than three to five (Bush) and seven to nine (Petruzzo) years after their increased program fees began appearing on their credit card statements. FAC, ¶¶ 41-46, 52, 68-69, 76 (J.A. 96-98, 101-02, 103). Because Plaintiffs have not sufficiently alleged a basis to invoke the doctrine of equitable estoppel, their claims against Virginia Surety

---

[34] It is axiomatic that dismissal is "appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).

[35] FAC, ¶¶ 37, 65 (J.A. 95, 101).

[36] FAC, ¶¶ 43-44, 51 (J.A. 96-98); (*see also id.* 745-61).

52

are time-barred, and the District Court could have dismissed them on that ground as well.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the District Court's dismissal of Plaintiffs' First Amended Complaint.


Defendant-Appellee Virginia Surety Company, Inc. attests that all other parties on whose behalf this filing is submitted concur in the filing's content.

Dated: October 14, 2015          WINSTON & STRAWN LLP

                                 **/s/ Stacie C. Knight**
                                 Stacie C. Knight
                                 sknight@winston.com
                                 Phoebe Norton Coddington
                                 pcoddington@winston.com
                                 100 North Tryon Street, Suite 2900
                                 Charlotte, NC 28202
                                 Telephone: (704) 350-7700
                                 Facsimile: (704) 350-7800

                                 Harvey Kurzweil
                                 hkurzweil@winston.com
                                 200 Park Avenue
                                 New York, NY 10166
                                 Telephone: (212) 294-4620
                                 Facsimile: (212) 294-4700

                                 Neal R. Marder
                                 nmarder@winston.com
                                 WINSTON & STRAWN LLP
                                 333 S. Grand Avenue
                                 Los Angeles, CA 90071
                                 Telephone: (213) 615-1700
                                 Facsimile: (213) 615-1750
                                 *ECF Registration Pending*

                                 *Attorneys for Defendant-Appellee*
                                 *Virginia Surety Company, Inc.*

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellees believe oral argument will significantly aid the Court's resolution of this appeal and accordingly respectfully request oral argument.

## CERTIFICATE OF COMPLIANCE
## <u>WITH TYPEFACE AND WORD COUNT LIMITATIONS</u>

I, Stacie C. Knight, counsel for Defendant-Appellee Virginia Surety Company, Inc. and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that the attached Brief of Defendants-Appellants is proportionately spaced, has a typeface of 14 points or more, and contains 13,351 words.

**/s/ Stacie C. Knight**
Stacie C. Knight

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

**/s/ Stacie C. Knight**
Stacie C. Knight

# ADDENDUM

# <u>TABLE OF CONTENTS</u>

**Page**

N.C. Gen. Stat. § 58-50-15(b)........................................................................ADD 001

N.C. Gen. Stat. § 58-51-75 ...........................................................................ADD 002

N.C. Gen. Stat. § 58-51-95 ...........................................................................ADD 005

Civil Minutes [ECF No. 84], *Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:14-cv-00667-SVW-CW (C.D. Cal. Oct. 24, 2014) ....................................................................................................ADD 008

West's North Carolina General Statutes Annotated
  Chapter 58. Insurance (Refs & Annos)
    Article 50. General Accident and Health Insurance Regulations
      Part 1. Miscellaneous Provisions

N.C.G.S.A. § 58-50-15

§ 58-50-15. Conforming to statute

Currentness

(a) Other Policy Provisions.--No policy provision which is not subject to G.S. 58-51-15 shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to Articles 50 through 55 of this Chapter.

(b) Policy Conflicting with Articles 50 through 55 of this Chapter.--A policy delivered or issued for delivery to any person in this State in violation of Articles 50 through 55 of this Chapter shall be held valid but shall be construed as provided in Articles 50 through 55 of this Chapter. When any provision in a policy subject to Articles 50 through 55 of this Chapter is in conflict with any provision of Articles 50 through 55 of this Chapter, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of Articles 50 through 55 of this Chapter.

**Credits**

Amended by Laws 1953, c. 1095, § 10; Laws 1991, c. 720, § 29.

N.C.G.S.A. § 58-50-15, NC ST § 58-50-15
The statutes and Constitution are current through Chapter 237 of the 2015 Regular Session of the General Assembly.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD 001**

West's North Carolina General Statutes Annotated
　　Chapter 58. Insurance (Refs & Annos)
　　　Article 51. Nature of Policies

N.C.G.S.A. § 58-51-75

§ 58-51-75. Blanket accident and health insurance defined

Effective: July 1, 2013

Currentness

(a) Any policy or contract of insurance against death or injury resulting from accident or from accidental means which insures a group of persons conforming to the requirements of one of the following subdivisions (1) to (7), inclusive, shall be deemed a blanket accident policy. Any policy or contract which insures a group of persons conforming to the requirements of one of the following subdivisions (3), (5), (6) or (7) against total or partial disability, excluding such disability from accident or from accidental means, shall be deemed a blanket health insurance policy. Any policy or contract of insurance which combines the coverage of blanket accident insurance and of blanket health insurance on such a group of persons shall be deemed a blanket accident and health insurance policy:

(1) Under a policy or contract issued to any common carrier or to any operator, owner, or lessee of a means of transportation, who or which shall be deemed the policyholder, covering a group defined as all persons or all persons of a class who may become passengers on the common carrier or the means of transportation.

(2) Under a policy or contract issued to an employer, or the trustee of a fund established by the employer, who shall be deemed the policyholder, covering any group of employees defined by reference to exceptional hazards incident to such employment, insuring such employee against death or bodily injury resulting while, or from, being exposed to such exceptional hazard.

(3) Under a policy or contract issued to a college, school or other institution of learning or to the head or principal thereof, who or which shall be deemed the policyholder.

(4) Under a policy or contract issued in the name of any volunteer fire department, emergency medical service, rescue first aid, civil defense, or any other such volunteer organization, which shall be deemed the policyholder, covering any group of members or other participants defined by reference to specified hazards incident to any activities or operations sponsored or supervised by such policyholder.

(5) Under a policy or contract issued to and in the name of an incorporated or unincorporated association of persons having a common interest or calling, which association shall be deemed the policyholder, having not less than 25 members, and formed for purposes other than obtaining insurance, covering all of the members of such association.

(6) Under a policy or contract issued to the head of a household, who shall be deemed the policyholder, whereunder the benefits thereof shall provide for the payment by the insurer of amounts for expenses incurred by the policyholder on account of hospitalization or medical or surgical aid for the policyholder, his or her spouse, his or her child or children, or other persons chiefly dependent on him or her for support and maintenance.

ADD 002

(7) Under a policy or contract issued to or in the name of any municipal or county recreation commission or department, sports team, league, tournament, or sponsor thereof, which shall be deemed the policyholder, covering participants, members, coaches, counselors, employees, officials, or supervisors defined by reference to specified hazards incident to activities or operations sponsored or supervised by such policyholder or on the premises of such policyholder.

(8) Under a policy or contract issued to any incorporated or unincorporated religious, charitable, recreational, educational, athletic, or civic organization or branch thereof, which shall be deemed the policyholder, covering any group of members, participants, or volunteers defined by reference to specified hazards incident to activities or operations sponsored or supervised by such policyholder or on the premises of such policyholder.

(9) Under a policy or contract issued to any overnight, day, religious, equestrian, adventure, wilderness, athletic, or other camp, or the sponsor thereof, which shall be deemed the policyholder, covering any group of campers, participants, counselors, employees, volunteers, or supervisors defined by reference to specified hazards incident to activities or operations sponsored or supervised by such policyholder or on the premises of such policyholder.

(10) Under a policy or contract issued to any bank, credit union, or other financial institution, which shall be deemed the policyholder, to insure any group of account holders or members of the policyholder and as defined by reference in the policy or contract, in which premiums for such insurance are paid by the policyholder, as authorized by the account holder or member from account holder or member funds on deposit with the policyholder, collected from the account holders or members by way of account billing or member billing, or by the policyholder and account holders jointly.

(11) Any other risk or class of risks which, in the discretion of the Commissioner, may be properly eligible for blanket accident, health, or accident and health insurance. The discretion of the Commissioner may be exercised on an individual risk basis or class of risks or both after the Commissioner has made the following findings:

a. The issuance of the blanket policy is not contrary to the best interest of the public.

b. The issuance of the blanket policy would result in economies of acquisition or administration.

c. The benefits are reasonable in relation to the premiums charged.

(b) All benefits under any blanket accident, blanket health or blanket accident and health insurance policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, or to his estate, or to a person or persons chiefly dependent upon the person insured for support and maintenance, except that if the person insured be a minor, such benefits may be made payable to his parent, guardian, or other person actually supporting the minor.

(c) Nothing contained in this section shall be deemed to affect the legal liability of policyholders for the death of or injury to, any such member of such group.

ADD 003

§ 58-51-75. Blanket accident and health insurance defined, NC ST § 58-51-75

**Credits**

Added by Laws 1945, c. 385. Amended by Laws 1947, c. 721; Laws 1953, c. 1095,§ 5; Laws 1961, c. 603; S.L. 2013-199, § 19, eff. July 1, 2013.

N.C.G.S.A. § 58-51-75, NC ST § 58-51-75

The statutes and Constitution are current through Chapter 237 of the 2015 Regular Session of the General Assembly.

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD 004**

West's North Carolina General Statutes Annotated
Chapter 58. Insurance (Refs & Annos)
Article 51. Nature of Policies

N.C.G.S.A. § 58-51-95

§ 58-51-95. Approval by Commissioner of forms, classification and rates; hearing; exceptions

Currentness

(a) No policy of insurance against loss or expense from the sickness, or from the bodily injury or death by accident of the insured shall be issued or delivered to any person in this State nor shall any application, rider or endorsement be used in connection therewith until a copy of the form thereof and of the classification of risks and the premium rates, or, in the case of cooperatives or assessment companies the estimated cost pertaining thereto, have been filed with the Commissioner.

(b) No such policy shall be issued, nor shall any application, rider or endorsement be used in connection therewith, until the expiration of 90 days after it has been so filed unless the Commissioner shall sooner give his written approval thereto.

(c) The Commissioner may within 90 days after the filing of any such form, disapprove such form

(1) If the benefits provided therein are unreasonable in relation to the premium charged, or

(2) If it contains a provision or provisions which are unjust, unfair, inequitable, misleading, deceptive or encourage misrepresentation of such policy.

(d) If the Commissioner shall notify the insurer which has filed any such form that it does not comply with the provisions of this section or sections, it shall be unlawful thereafter for such insurer to issue such form or use it in connection with any policy. In such notice the Commissioner shall specify the reasons for his disapproval and state that a hearing will be granted within 20 days after request in writing by the insurer.

(e) The Commissioner may at any time, after a hearing of which not less than 20 days' written notice shall have been given to the insurer, withdraw his approval of any such form on any of the grounds stated in this section. It shall be unlawful for the insurer to issue such form or use it in connection with any policy after the effective date of such withdrawal of approval. The notice of any hearing called under this paragraph shall specify the matters to be considered at such hearing and any decision affirming disapproval or directing withdrawal of approval under this section shall be in writing and shall specify the reasons therefor: Provided, that the provisions of this section shall not apply to workers' compensation insurance, accidental death or disability benefits issued supplementary to life insurance or annuity contracts, medical expense benefits under liability policies or to group accident and health insurance.

(f) An insurer may revise rates chargeable on policies subject to this section, other than noncancellable policies, with the approval of the Commissioner if the Commissioner finds that the revised rates are not excessive, not inadequate, and not unfairly discriminatory; and exhibit a reasonable relationship to the benefits provided by the policies. The approved rates shall be guaranteed by the insurer, as to the policyholders affected by the rates, for a period of not less than 12 months; or as an alternative

ADD 005

to the insurer giving the guarantee, the approved rates may be applicable to all policyholders at one time if the insurer chooses to apply for that relief with respect to those policies no more frequently than once in any 12-month period. The rates shall be applicable to all policies of the same type; provided that no rate revision may become effective for any policy unless the insurer has given the policyholder written notice of the rate revision 45 days before the effective date of the revision. The policyholder must then pay the revised rate in order to continue the policy in force. The Commissioner may adopt reasonable rules, after notice and hearing, to require the submission of supporting data and such information as the Commissioner considers necessary to determine whether the rate revisions meet these standards. In adopting the rules under this subsection, the Commissioner may require identification of the types of rating methodologies used by filers and may also address issue age or attained age rating, or both; policy reserves used in rating; and other recognized actuarial principles of the NAIC, the American Academy of Actuaries, and the Society of Actuaries.

(g) For policies subject to this section, an individual health insurer shall not increase an individual's renewal premium for continued health insurance coverage under the terms of the individual's health insurance policy based on any health status-related factors in relation to the individual or a dependent of the individual, including:

(1) Health status.

(2) Medical condition (including physical and mental illnesses).

(3) Claims experience.

(4) Duration from issue.

(5) Receipt of health care.

(6) Medical history.

(7) Genetic information.

(h) Every policy that is subject to this section and that provides individual accident and health insurance benefits to a resident of this State shall return to policyholders benefits that are reasonable in relation to the premium charged. The Commissioner may adopt rules or utilize existing rules to establish minimum standards for loss ratios of policies on the basis of incurred claims experience and earned premiums in accordance with accepted actuarial principles and practices to assure that the benefits are reasonable in relation to the premium charged. Every insurer providing policies in this State subject to this section shall not less than annually file for approval its rates, rating schedules, and supporting documentation to demonstrate compliance with the applicable loss ratio standards of this State as adopted by the Commissioner. All filings of rates and rating schedules shall comply with the standards adopted by the Commissioner. The filing shall include a certification by an individual who is either a Fellow or an Associate of the Society of Actuaries or a Member of the American Academy of Actuaries that the rates are not excessive, not inadequate, and not unfairly discriminatory; and that the rates exhibit a reasonable relationship to the benefits provided by the policy. Nothing in this subsection shall require an insurer to provide certification with respect to a previous rate period, or to require an insurer to reduce properly filed and approved rates before the end of a rate period. This subsection does not apply to any long-term care policy issued in this State on or after February 1, 2003, and noncancellable accident and health insurance.

ADD 006

(i) For any long-term care policy issued in this State on or after February 1, 2003, an insurer shall on or before March 15 of each year:

    (1) Provide to the Commissioner an actuarial certification listing all of its long-term care policy forms available for sale in this State as of December 31 of the prior year, stating that the current premium rate schedule for each form is sufficient to cover anticipated costs under moderately adverse experience and stating that the premium rate schedule is reasonably expected to be sustainable over the life of the form with no future premium increases anticipated.

    (2) For any policy form for which the statement in subdivision (1) of this subsection cannot be made or is qualified, submit a plan of corrective action to the Commissioner for approval.

(j) For purposes of this section, accident and health insurance means insurance against death or injury resulting from accident or from accidental means and insurance against disablement, disease, or sickness of the insured. This includes Medicare supplemental insurance, long-term care, nursing home, or home health care insurance, or any combination thereof, specified disease or illness insurance, hospital indemnity or other fixed indemnity insurance, short-term limited duration health insurance, dental insurance, vision insurance, and medical, hospital, or surgical expense insurance or any combination thereof. Notwithstanding any other provision to the contrary, subsection (h) of this section does not apply to disability income insurance.

**Credits**

Added by Laws 1951, c. 784. Amended by Laws 1979, c. 755, § 15; Laws 1989,c. 485, § 56; Laws 1991, c. 636, § 3; Laws 1991, c. 720, § 4; S.L. 2001-334, § 17.3, eff. Aug. 3, 2001; S.L. 2005-223, § 1(b), eff. Jan. 1, 2006; S.L. 2005-412, § 1(a), (b), eff. July 7, 2006.

N.C.G.S.A. § 58-51-95, NC ST § 58-51-95

The statutes and Constitution are current through Chapter 237 of the 2015 Regular Session of the General Assembly.

End of Document    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADD 007**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-CV-00667-SVW (CWx) | Date | October 24, 2014 |
|---|---|---|---|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | |

JS-

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**     IN CHAMBERS ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [67] [68] [69] [70] [71]

### I.  SUMMARY OF FACTS

#### A.  The Parties

About fifteen years ago, Arie Waiserman, the plaintiff, enrolled in the HealthExtras Benefits Program.  (SAC ¶ 31).  The program provides two forms of insurance: accidental permanent and total disability insurance underwritten by National Union Fire Insurance Company of Pittsburgh, PA, and emergency accident and sickness medical expense coverage underwritten by Virginia Surety Company, Inc.  (SAC ¶¶ 42, 130, 157).

According to Waiserman's complaint, Catamaran Health Solutions, LLC (formerly known as HealthExtras, Inc., Catalyst Health Solutions, Inc., and SXC Health Solutions) operated and administered the program until August 1, 2012.  (SAC ¶¶ 7–9).  Thereafter, HealthExtras, LLC began to service, administer, collect, and allocate premiums for the program.  (SAC ¶ 8).  At some point, all these entities operated under the name "HealthExtras."  (SAC ¶ 7).  Alliant Insurance Services, Inc. and Alliant Services Houston, Inc. are listed as the brokers of record for the program.  (SAC ¶ 11, 150).  Finally, AIG created a "sham trust" for the program—the "AIG Insurance Trust, for the Account of HealthExtras."  (SAC  ¶ 91, 144, 146–48).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-CV-00667-SVW (CWx) | | Date | October 24, 2014 |
|---|---|---|---|---|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | | |

### B. The Scheme

Waiserman alleges that the program violates California law.  For example, the defendants issued the disability policies to the sham trust—an ineligible "group" under California law.  (SAC ¶ 81).  Furthermore, the program's overarching structure circumnavigated regulatory oversight, allowing the defendants to unlawfully increase premium payments.  (SAC ¶¶ 64–67).  The defendants, however, seldom used these hiked-up premiums for coverage, preferring instead to line their own pockets and fund advertising.  (SAC ¶¶ 71–72).  And, according to Waiserman, the defendants never intended to satisfy insureds' claims.  (SAC ¶¶ 71–73).

Waiserman, however, did not submit a claim or suffer a covered loss.  Indeed, his putative class explicitly excludes those who have.

### C. The Lawsuit

Waiserman sued in January 2014.  Styled as a class action, his suit has five causes of action: (1) California's False Advertising Law; (2) the Unfair Competition Law; (3) the duty of good faith and fair dealing; (4) conversion; and (5) civil conspiracy.  (SAC ¶ 166–213).  After Waiserman submitted his Second Amended Complaint, the defendants filed numerous motions to dismiss.  First, the defendants argue that Waiserman lacks Article III standing because he did not suffer an injury in-fact.  Second, defendants attack each claim—on a variety of shared and unshared grounds.

## II. LEGAL STANDARD

*Mayfield v. United States* summarized Article III's standing requirements:

First, the plaintiff must have suffered an injury in fact, the violation of a protected interest that is (a) concrete and particularized, and (b) actual or imminent.  Second, the plaintiff must establish a causal connection between the injury and the defendant's conduct.  Third, the plaintiff must show a likelihood that the injury will be redressed by a favorable decision. A plaintiff must demonstrate standing separately for each form of relief sought.

| | : |
|---|---|
| Initials of Preparer | PMC |

**ADD 009**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-CV-00667-SVW (CWx) | Date | October 24, 2014 |
|---|---|---|---|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | |

599 F.3d 964, 969 (9th Cir. 2010) (internal citations and quotation marks omitted). Economic injury is a viable injury in-fact. *See, e.g.*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). At the pleading stage, the plaintiff must allege facts that, assuming their truth, would establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## III.  ANALYSIS

California law dictates that the defendants' program is enforceable. Because the program is enforceable and Waiserman failed to submit a claim for benefits, he suffered no injury in-fact. Thus, he lacks standing to sue in federal court.

### A.  The Insurance Policy's Enforceability

According to Waiserman, the insurance contract is illegal; therefore, the policy is worthless and illusory. Under California law, however, that is not the case.

In *Medina v. Safe-Guard Products*, the plaintiff sued under California's Unfair Competition Law after he entered into an insurance contract with a company not licensed to sell insurance. 164 Cal. App. 4th 105, 108 (Cal. Ct. App. 2008). As in this case, "[t]he irony [was] that [plaintiff's] class action [was] predicated on the idea that he bought an absolutely void contract and cannot enforce it (hence he is out the money he paid for the contract, having received nothing for it)." *Id.*

There was no dispute in *Medina* that the insurance contract was illegal. Nevertheless, the Court of Appeal posited, "[h]olding an insurance contract *void* because the insurer is not licensed is about the worst possible remedy for the illegality of the insurer's unlicensed status . . . ." *Id.* at 111. Noting that "California law most certainly does not leave consumers in the lurch," the panel held "[a] consumer who innocently purchased a policy from a company unlicensed in California may still enforce that insurance contract." *Id.* at 108–09.[1]

*Medina* reaches this case's analogous circumstances. In *Medina*, the insurer was not licensed—a fundamental defect that disturbs the very nature of the bargain. Here, the defendants also are not licensed, and further, they created a sham trust to mask their dealings. Although the HealthExtras policies violated a broader swath of state law than the contracts in *Medina* did, the same public policy

_____

[1] The Court ultimately concluded that the plaintiff lacked standing to bring a UCL claim. *Id.* at 678.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

## ADD 010

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-CV-00667-SVW (CWx) | Date | October 24, 2014 |
|----------|--------------------------|------|------------------|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | |

considerations that mended *Medina*'s systemic problems apply with equal force and effect here. If Waiserman submitted a valid claim, he could enforce the contract and obtain the bargained-for payout.

### B. The Plaintiff's Injury In-Fact

Waiserman predicates his suit on two theories of harm: (1) he paid for an illusory insurance policy, and (2) the defendants took his money never intending to pay out claims. Waiserman, however, did not submit a claim or suffer a covered loss. Absent these allegations, he cannot sue in federal court.

First, Waiserman's policy was not illusory. If he made a claim, *Medina* would have allowed him to enforce the policy. And if it was enforceable, it was not illusory. Therefore, Waiserman's premiums were not in vain. Second, Waiserman alleges that because the defendants had no intention of paying out claims, they misappropriated his money. This supposition is pure speculation. How could Waiserman know whether defendants would pay out his claim if he never submitted one? Therefore, Waiserman cannot satisfy Article III, which requires concrete, not speculative harm. *See, e.g.*, *Maio v. Aetna, Inc.* 221 F.3d 472, 480 (3d. Cir. 2000) ("[T]he [insurance plan] simply cannot be 'worthless' unless something plaintiffs were promised was denied to them.").

Two cases bolster this conclusion. In *Weaver v. Aetna Life Insurance Co.*, the plaintiff's alleged harm was "paying premiums for [a] nonexistent or illegal insurance policy." No. 3:08-CV-00037, 2008 WL 4833035, at *2 (D. Nev. Nov. 4, 2008). The district court concluded, "one could not deem a policy nonexistent unless she was improperly denied benefits. Any other claim of a 'nonexistent' policy ventures into the metaphysical." *Id.* at *3. In an unpublished opinion, the Ninth Circuit upheld the district court's dismissal for lack of standing: "Weaver did not allege that she made a claim for which payment was not received during the time that she paid premiums . . . . Thus, she has failed to show that she did not receive the benefit of the group-insurance contract or that the policy did not exist, because benefits were paid to insureds who made claims." 370 F. App'x 822, 824 (9th Cir. 2010).

The second case is *Impress Communications v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal. 2003). In this case, putative class representatives accused defendants of fraudulently inducing plaintiffs to join disability insurance plans. *Id.* at 1055–56. The plaintiffs alleged that the plans were void and, thus, the collection of plaintiffs' premiums was improper. *Id.* But the plaintiffs did not file claims or allege that they were denied benefits. *Id.* Consequently, the plaintiffs could not establish that they received less coverage than they bargained for; their injuries were purely speculative and did not confer standing. *Id.* at 1059, 1065.

|  |  | : |  |
|--|--|---|--|
| Initials of Preparer |  | PMC |  |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:14-CV-00667-SVW (CWx) | | Date | October 24, 2014 |
|---|---|---|---|---|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | | |

Just like the plaintiffs in *Weaver* and *Impress*, Waiserman alleges he paid premiums for "illegal," "illusory,"and "worthless" coverage that the underwriters had no intent to honor. (SAC ¶ 117). And just like the plaintiffs in *Weaver* and *Impress*, Waiserman failed to submit a claim for a covered loss. Thus, just like the plaintiffs in *Weaver* and *Impress*, Waiserman's purported injury is "purely speculative and does not suffice to confer standing." *Impress Commc'ns*, 335 F. Supp. 2d at 1059.

### C. Contrary Authority Is Inapposite or Unpersuasive

Two copycat suits survived the motion to dismiss phase. These opinions are inapposite or unpersuasive.

In *Petruzzo v. HealthExtras, Inc.*, the court found a cognizable injury because the policy was void under North Carolina law. No. 5:12-CV-113-FL, 2013 WL 4517273, at *6 (E.D.N.C. Aug. 23, 2013). Consequently, the plaintiff paid for a valueless policy—an obvious injury. *Id.* But California insurance laws do not have the same permutations. In California, the policy is enforceable, and therefore, it cannot be valueless. *See Medina*, 164 Cal. App. 4th at 109–11. Given this fundamental difference, *Petruzzo* has little bearing on this Court's standing analysis.

Waiserman's case is more analogous to *Williams v. National Union Fire Insurance Co. of Pittsburg, PA*, No. 1:14-CV-309-TWT, 2014 WL 4386463 (N.D. Ga. Sept. 4, 2014). *Williams* surveyed Georgia's insurance laws to determine whether the policies were valid and enforceable. *Id.* at *2. After navigating Georgia's insurance code, the court concluded that "based on the allegations in the Amended Complaint, the insurance policies were valid and enforceable." *Id.* Thus, the customer would be entitled to the benefit of his bargain—insurance coverage in exchange for premium payments. The court then concluded:

> The Defendant National Union argues that the Plaintiffs suffered no harm because they got the insurance that they paid for and never made any claims for disability benefits. This may be true, but it cannot be determined as a matter of law from the face of the pleadings. Therefore, the case may proceed with discovery and the issues raised by the motion may be revisited at the summary judgment stage.

*Id.* at *3. This Court disagrees. By determining that the "policies were valid and enforceable," the *Williams* court found, as a matter of law, that the plaintiff got what he paid for. It is inconsistent to say that the court cannot similarly determine whether the plaintiff suffered an injury in-fact (he did not because the policy was enforceable and he was not denied any benefit of the bargain). Regardless, in

| | : |
|---|---|
| Initials of Preparer | PMC |

### ADD 012

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:14-CV-00667-SVW (CWx) | Date | October 24, 2014 |
|---|---|---|---|
| Title | Waiserman v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. | | |

this case, it is undisputed that Plaintiff never made a claim and that the policy is enforceable under California law; therefore, Waiserman cannot establish injury in fact.

### D. Leave to Amend

Dismissal with prejudice is appropriate if amendment would be futile. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir, 1992). Because Waiserman admitted at the hearing he will exclude individuals who suffered covered loses or submitted claims from the putative class, an amendment could not cure his lack of standing.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss and DISMISSES Plaintiffs Second Amended complaint WITH PREJUDICE.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

**ADD 013**